F. Dennis **ALERDING, et al., Plaintiffs,**

v.

**OHIO HIGH SCHOOL ATHLETIC ASSOCIATION, et al., Defendants.**

No. C–1–83–1596.

United States District Court, S.D. Ohio, W.D.

Aug. 20, 1984.

Jerome Randolph, Cincinnati, Ohio, John E. Lange, III, Harold F. Simms, Newport, Ky., for plaintiffs.

Roger W. Healey, Cincinnati, Ohio, for Ohio High School Athletic Ass'n and Richard L. Armstrong, Com'r.

Gary D. Bullock, Cincinnati, Ohio, for St. Xavier High School.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

SPIEGEL, District Judge:

This is a civil rights action pursuant to 42 U.S.C. § 1983, whereby plaintiffs seek declaratory and injunctive relief for alleged violations of constitutionally protected rights. Specifically, plaintiffs bring this action on behalf of residents of northern Kentucky who attend St. Xavier High School in Cincinnati, Ohio. These students are barred from participating in Ohio interscholastic athletics by Ohio High School Athletic Association's (hereinafter OHSAA) Bylaw 4, Section 6.4–6–10 hereinafter Bylaw 4–6–10, which prohibits such participation by athletes whose parents reside outside of Ohio. Plaintiffs contend that by passing and enforcing Bylaw 4–6–10, defendants have denied them rights protected by the Privileges and Immunities Clause, Article IV, Section 2 of the Constitution.

This matter came on for a combined hearing on plaintiffs' motion for a preliminary injunction and trial on the merits. In light of the evidence presented therein, we make the following findings of fact and conclusions of law. In doing so, we emphasize that we do not pass on the wisdom of Bylaw 4–6–10. Our only inquiry is whether the enforcement of Bylaw 4–6–10 results in a deprivation of constitutional rights. If it does not, plaintiffs' remedy lies not with this Court, but with the administrators of the OHSAA and its member schools who passed Bylaw 4–6–10.

As developed below, we conclude that the passage, implementation and enforcement of Bylaw 4–6–10 results in no constitutional deprivation to the plaintiffs. In this regard, our decision is consistent with other courts who have passed on similar issues. *See Zeiler v. Ohio High School Athletic Ass'n,* slip op. 83–765 (N.D.Ohio, Feb. 3, 1984) (holding Bylaw 4–6–10 not violative of the Free Exercise Clause of the

First Amendment, the Due Process and Equal Protection Clauses of the Fourteenth Amendment, and the Privileges and Immunities Clause, United States Constitution, Art. IV, § 2); *Menke v. Ohio High School Athletic Ass'n,* 2 Ohio App.3d 244, 245–46, 441 N.E.2d 620 (Ct.App. Hamilton Cty. 1981) (holding Bylaw 4–6–10 not violative of the Due Process or Equal Protection Clauses of the Fourteenth Amendment).

## FINDINGS OF FACT

1. Plaintiffs, Dennis C. Alerding, David R. Moellering, Douglas R. Moellering and Gregory R. Moellering, are minors and were at the time of the filing of their complaint, students at St. Xavier High School in Cincinnati, Ohio.

2. Plaintiffs, Dennis C. Alerding, David R. Moellering, Douglas R. Moellering and Gregory R. Moellering, are residents of the state of Kentucky, residing in Campbell and Kenton Counties.

3. Defendant St. Xavier High School is a parochial high school located in Hamilton County, Ohio.

4. Defendant OHSAA is a voluntary unincorporated nonprofit association composed of accredited high schools in the state of Ohio. It is composed of public, parochial and private school members including defendant St. Xavier High School in Cincinnati, Ohio. A school becomes a member of the OHSAA by requesting and completing a participation card with the approval of its Board of Education. Each school must renew its membership annually by completion of such a membership card with the approval of its Board of Education.

5. The OHSAA has promulgated certain rules and regulations to govern interscholastic athletics at all of its member schools. These rules or bylaws of the OHSAA and amendments thereto are adopted by a majority written referendum vote of the member schools. Among the rules adopted by the OHSAA are rules respecting the eligibility of students to compete in interscholastic athletics.

6. On or about December 18, 1979 the member high schools of the OHSAA adopted by a 65.1% referendum vote the rule which is now known as Bylaw 4–6–10. This bylaw provides that a student whose parents reside in another state will be ineligible for athletics in an Ohio member school.

7. The passage and implementation of Bylaw 4–6–10 effectively prohibits Dennis C. Alerding, David R. Moellering, Douglas R. Moellering and Gregory R. Moellering from participating in interscholastic sports of their choice while attending St. Xavier High School.

## CONCLUSIONS OF LAW

1. The jurisdiction of this Court is not disputed in this matter, nor can it be. This action is brought pursuant to 42 U.S.C. § 1983 which provides in pertinent part:

Every person who under color of any statute, ordinance, regulation, custom or usage, of any State ... subjects or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

Plaintiffs allege violations of their individual rights as guaranteed by the Privileges and Immunities Clause, Art. IV, Section 2 of the United States Constitution, which states: "The Citizens of each State shall be entitled to all Privileges and Immunities of Citizens in the several States." Therefore, jurisdiction is proper under 28 U.S.C. §§ 1331 and 1343.

2. The first hurdle plaintiffs must clear in order to succeed on their claim under 42 U.S.C. § 1983 is to demonstrate that the action complained of is fairly attributable to the state. This obstacle is of little hindrance here as the Sixth Circuit has ruled that the OHSAA acts under color of state law for the purposes of organizing and regulating Ohio high school interscholastic athletics. *Yellow Springs Exempted Village School District Board of Education*

*v. Ohio High School Athletic Ass'n*, 647 F.2d 651 (6th Cir.1981).

3. The second element of plaintiffs' cause of action requires proof of a deprivation of a right protected by the Privileges and Immunities Clause. In *United Building and Construction Trades Council of Camden County and Vicinity v. Council of the City of Camden*, —— U.S. ——, 104 S.Ct. 1020, 79 L.Ed.2d 249 (1984) (hereinafter *Camden*), the Court delineated a two-step analysis for alleged Privileges and Immunities violations. First, the court must determine whether the interest of the non-residents is protected by the Privileges and Immunities Clause. If so, the next question is whether there is a substantial reason for the discrimination. Pertinent to this substantial reason analysis are considerations of whether the non-residents "constitute a peculiar source of the evil at which the [discriminatory treatment] is aimed." *Id.* at 1029–30 (quoting *Baldwin v. Fish and Game Com'n of Montana*, 436 U.S. 371 at 398, 98 S.Ct. 1852, 1867, 56 L.Ed.2d 354) and "whether the degree of discrimination bears a close relation to [the reasons for the discrimination]." *Camden*, 104 S.Ct. at 1029 (quoting *Toomer v. Witsell*, 334 U.S. 385, 396, 68 S.Ct. 1156, 1162, 92 L.Ed. 1460 (1948)).

Applying this analysis to the facts of the instant case, we conclude that the plaintiffs' interest in participating in interscholastic high school athletics is not protected by the Privileges and Immunities Clause. Only those interests "sufficiently fundamental to the promotion of interstate harmony ..." are protected by the Privileges and Immunities Clause. *Camden*, 104 S.Ct. at 1027–28. There are two possible interpretations of this fundamentality requirement, and we conclude that under neither is plaintiffs' interest in playing interscholastic high school sports so fundamental to interstate harmony as to fall within the purview of the Privileges and Immunities Clause.

One view of the fundamentality requirement contemplates the presence of a fundamental right as that term is used in equal

protection analysis. If this view is correct, plaintiffs here clearly do not assert a denial of a fundamental right. In rejecting a challenge to Texas' school-financing system which resulted in disparate levels of financing among districts, the Supreme Court held that there is no fundamental right to equal levels of education in all districts, since no such right is explicitly or implicitly guaranteed by the Constitution. *San Antonio Independent School District v. Rodriguez,* 411 U.S. 1, 29–39, 93 S.Ct. 1278, 1294–1300, 36 L.Ed.2d 16 (1973). There, as in this case, plaintiffs argued that discriminatory treatment by the state afforded them a comparatively deficient education. We think the reasoning of *Rodriguez* leads to the conclusion that the discriminatory treatment of the plaintiffs here, resulting in a high school education lacking the benefit of participation in interscholastic athletics, does not impinge upon a fundamental right.

The other view of the fundamentality analysis is that it concerns those rights fundamental to the promotion of interstate harmony, and that this category is broader than those fundamental rights explicitly or implicitly guaranteed by the Constitution. Assuming without deciding that this characterization is correct, we nevertheless conclude that the plaintiffs' interest in participating in interscholastic high school athletics is not sufficiently fundamental to the promotion of interstate harmony as to fall within the protection of the Privileges and Immunities Clause.

We turn for guidance to cases in which the United States Supreme Court has determined the interest involved to be protected by the Privileges and Immunities Clause. We note, as did the Court in *Camden,* 104 S.Ct. 1020, that

> [the] cases expounding the Privileges and Immunities Clause have dealt with th[e] basic and essential activity [of pursuing one's livelihood.].

*Id.* at 1028. *See, e.g., Camden,* 104 S.Ct. 1020 (1984) (holding the Privileges and Immunities Clause applicable to a residency requirement for municipal employment); *Hicklin v. Orbeck,* 437 U.S. 518, 98 S.Ct. 2482, 57 L.Ed.2d 397 (1978) (striking down

"Alaska Hire" statute which conferred a resident hiring preference for all employment related to the development of Alaska's oil and gas resources); *Austin v. New Hampshire,* 420 U.S. 656, 95 S.Ct. 1191, 43 L.Ed.2d 530 (1975) (striking down New Hampshire's Commuters Income Tax); *Toomer v. Witsell,* 334 U.S. 385, 68 S.Ct. 1156, 92 L.Ed. 1460 (1948) (striking down a South Carolina statute requiring of non-residents a licensing fee for shrimp boats one hundred times that required of residents). While we do not mean to denigrate the activity here involved, this case pales in comparison to the cases dealing with employment opportunities.

We acknowledge that the opportunity to obtain an education may be a necessary predicate to avail one's self of later opportunities of employment. Consequently, we would view with much more suspicion the case where a state sought to exclude all non-resident students from parochial or private schools within its borders. However, where a state acts so as to deny non-residents only one incident of education, that is participating in interscholastic athletics, at a parochial or private school within its borders, we do not think that such a denial sufficiently impacts the non-residents' later pursuit of employment so as to merit constitutional protection. We realize that the distinction is one of degree. However, such distinctions are neither foreign nor insignificant to constitutional analysis. Indeed, in *Rodriguez,* 411 U.S. 1, 93 S.Ct. 1278, 36 L.Ed.2d 16, the Court mentioned that a closer inspection of the state's financing scheme might be required if it resulted in an absolute denial of educational opportunities. *Id.* at 37, 93 S.Ct. at 1299.

As we are of the opinion that defendants have not deprived plaintiffs of any rights guaranteed by the Constitution, it is hereby ORDERED that plaintiffs' request for declaratory and injunctive relief is DENIED.

SO ORDERED.