**F. Dennis ALERDING, individually and as next friend of Dennis C. Alerding, a minor; and Roger H. Moellering, individually and as next friend of David R. Moellering, Douglas R. Moellering and Gregory R. Moellering, minors, Plaintiffs-Appellants,**

v.

**OHIO HIGH SCHOOL ATHLETIC AS-SOCIATION; Richard L. Armstrong, Commissioner, Ohio High School Athletic Association and St. Xavier High School, Defendants-Appellees.**

No. 84–3787.

United States Court of Appeals, Sixth Circuit.

Sept. 19, 1985.

Decided Dec. 17, 1985.

John E. Lange, III, Harold F. Simms—Lead Counsel, Lange, Quill & Powers, P.S.C., Newport, Ky., Jerome C. Randolph argued, Keating, Muething & Klekamp, Cincinnati, Ohio, for plaintiffs-appellants.

Robert W. Healey argued, Gary D. Bullock, Cincinnati, Ohio, for defendants-appellees.

Before ENGEL and KRUPANSKY, Circuit Judges; and PECK, Senior Circuit Judge.

JOHN W. PECK, Senior Circuit Judge.

The question presented upon appeal is whether a bylaw of the Ohio High School Athletic Association (hereinafter OHSAA) barring nonresident students from participation in Ohio interscholastic sports violates the Privileges and Immunities Clause of the United States Constitution. Article IV, § 2, cl. 1. For the reasons stated below, we hold that the subject bylaw does not violate the guarantees of the Privileges and Immunities Clause.

Appellants are residents of northern Kentucky who attend St. Xavier High School, a private secondary school in neighboring Cincinnati, Ohio. Appellants are prohibited from participating in interscholastic sports at St. Xavier or any other Ohio school pursuant to appellee OHSAA's Bylaw 4, Section 6.4–6–10 (hereinafter Bylaw 4-6-10). Bylaw 4-6-10 provides in relevant part:

A student whose parents live in another state will be ineligible for athletics in an Ohio member school.

Virtually every public, parochial, and private secondary school in Ohio, including St. Xavier, is an OHSAA member, and must comply with this bylaw. OHSAA adopted Bylaw 4–6–10 in 1979 after some public school members complained that private school members situated near state borders were recruiting out-of-state students for varsity sports. Out-of-state recruitment was perceived as giving an unfair competitive edge to the private schools, whose teams often predominated in interscholastic events and state tournaments.

Appellants brought this action pursuant to 42 U.S.C. § 1983 [1] alleging that Bylaw 4–6–10 violates their civil rights as guaranteed by the Privileges and Immunities Clause which states: "The Citizens of each State shall be entitled to all Privileges and Immunities of Citizens in the several States." [2] Appellants sought both declaratory and injunctive relief from the United States District Court for the Southern District of Ohio. After denying appellants' application for a temporary restraining order, the district court conducted a consolidated hearing on the merits and on appellants' motion for a preliminary injunction. The district court concluded that none of appellants' constitutional rights had been violated, and denied their requests for relief from Bylaw 4–6–10. *Alerding v. Ohio High School Athletic Ass'n*, 591 F.Supp. 1538, 1541 (S.D.Oh.1984). This appeal followed.

The sole issue on appeal is whether the district court erred in finding that Bylaw 4–6–10 does not violate appellants' rights under the Privileges and Immunities

Clause. In considering the right asserted here by appellants under the Privileges and Immunities Clause, we initially note that the Supreme Court has never precisely delineated the contours of the clause. Nonetheless, over the years the Supreme Court has provided substantial guidance as to the type of inquiry to be entered into in determining whether an asserted right or privilege falls within the clause's scope of protection. In *United Building & Construction Trades Council of Camden County v. Mayor & Council of Camden*, 465 U.S. 208, 104 S.Ct. 1020, 79 L.Ed.2d 249 (1984), the Supreme Court stated that application of the Privileges and Immunities Clause to a state's act of discrimination against out-of-state residents involves a two-pronged test. First, the court must determine whether the challenged act burdens one of the privileges and immunities protected by the clause. *Id.* at 218, 104 S.Ct. at 1027. If so, the court must then decide whether there is justification which renders the discrimination permissible. Specifically, the court must consider (i) whether there is a "substantial reason" for the discrimination and (ii) whether the discrimination bears a substantial relation to the state's objective in enacting the discriminatory measure. *Id.* at 1029. The propriety of this approach to the Privileges and Immunities Clause was recently reaffirmed by the Supreme Court in *Supreme Court of New Hampshire v. Piper*, —— U.S. ——, 105 S.Ct. 1272, 84 L.Ed.2d 205 (1985).

We turn our attention to the first prong of the test: is the right to participate in interscholastic sports a privilege within the purview of the Privileges and Immunities Clause. The Privileges and Immunities Clause was intended to establish "a norm

---

**1.** 42 U.S.C. § 1983 provides in pertinent part: Every person who under color of any statute, ordinance, regulation, custom or usage, of any State ... subjects or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

OHSAA is a state actor for purposes of § 1983 because Ohio has implicitly delegated to OHSAA its power to regulate and organize interscholastic athletic activities. *Yellow Springs Exempted Village School Dist. Bd. of Educ. v. Ohio High School Athletic Ass'n*, 647 F.2d 651 (6th Cir.1981).

**2.** The district court's jurisdiction was, therefore, proper under 28 U.S.C. §§ 1331 and 1343.

of comity" among the various states, *Baldwin v. Montana Fish & Game Comm'n,* 436 U.S. 371, 382, 98 S.Ct. 1852, 1859, 56 L.Ed.2d 354 (1977); *Austin v. New Hampshire,* 420 U.S. 656, 660–61, 95 S.Ct. 1191, 1194–95, 43 L.Ed.2d 530 (1975), so as to "fuse into one Nation a collection of independent, sovereign states," *Toomer v. Witsell,* 334 U.S. 385, 395, 68 S.Ct. 1156, 1162, 92 L.Ed. 1460 (1948). It thus seeks to promote interstate harmony by preventing unreasonable discrimination by one state against the citizens of another state in favor of its own. *Camden,* 465 U.S. at 218, 219, 104 S.Ct. at 1027, 1028; *Baldwin,* 436 U.S. at 382, 98 S.Ct. at 1859. At the same time, the Supreme Court has recognized that:

> Some distinctions between residents and nonresidents merely reflect the fact that this is a Nation composed of individual States, and are permitted; other distinctions are prohibited because they hinder the formation, the purpose, or the development of a single Union of those states. Only with respect to those "privileges" and "immunities" bearing upon the vitality of the Nation as a single entity must the State treat all citizens, resident and nonresident, equally.

*Baldwin,* 436 U.S. at 383, 98 S.Ct. at 1860. Thus, the "privileges and immunities" entitled to constitutional protection have been described as those that are "fundamental," *Camden,* 104 S.Ct. at 1028; *Baldwin,* 436 U.S. at 388, 98 S.Ct. at 1862, "basic," *Baldwin,* 436 U.S. at 388, 98 S.Ct. at 1863, or "essential," *id.* at 387, 98 S.Ct. at 1862, to the maintenance and vitality of the Union. Most commonly, such privileges have included those involving the right to pursue a livelihood or economic opportunities. *See, e.g., Camden, supra,* (ordinance adopted pursuant to statewide affirmative action program unconstitutionally discriminated against out-of-state residents' opportunity to work on N.J. public works projects); *Piper, supra* (Vermont Supreme Court rule limiting bar admission to state residents violated Privileges and Immunities Clause); *Toomer, supra* ($2500 license fee for nonresident fishermen when contrasted with $25 fee for resident fishermen was impermissible under Privileges and Immunities Clause). However, the Privileges and Immunities Clause is not limited to the protection of economic interests, *Piper,* —— U.S. at —— n. 11, 105 S.Ct. at 1277 n. 11, but has been applied to protect other fundamental rights. *See Doe v. Bolton,* 410 U.S. 179, 93 S.Ct. 739, 35 L.Ed.2d 201 (1973) (Ga. statute restricting the constitutionally guaranteed right to abortion to residents violated the Privileges and Immunities Clause).

In the instant case, the district court utilized *Camden's* analysis to conclude that "plaintiffs' interest in playing high school sports [is not] so fundamental to interstate harmony as to fall within the purview of the Privileges and Immunities Clause." 591 F.Supp. at 1540. Emphasizing that cases granting the protection of the Privileges and Immunities Clause have generally involved economic activity and the basic right to pursue a livelihood the district court found that "this case pales in comparison ..." *Id.* at 1541. We agree. Although interscholastic sports importantly promote opportunities for growth, leadership, and responsibility among students, we can find no way in which the right to participate in interscholastic sports is fundamental or basic to the nation's vitality or interstate harmony. Accordingly, it is not a fundamental right within the meaning of the Privileges and Immunities Clause.

We find no merit in appellants' argument that the district court incorrectly relied on *San Antonio Independent School Dist. v. Rodriguez,* 411 U.S. 1, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973), in reaching its decision. In *Rodriguez* the Supreme Court stated that education, although of undoubted importance, is not a fundamental right guaranteed by the Equal Protection Clause of the Fourteenth Amendment. *Id.* at 35, 93 S.Ct. at 1297. In the instant case, the district court stated that, if education is not a fundamental right under *Rodriguez,* then neither is one aspect of education, i.e., participation in interscholastic events. Appellants contend that *Rodriguez,* as an equal protection case, has little precedential value

in this Privileges and Immunities case and that "fundamental" for the purposes of the Privileges and Immunities Clause has a different meaning than "fundamental" for purposes of the Equal Protection Clause; they urge that to view "fundamental" as having the same meaning in both clauses collapses the Privileges and Immunities Clause into the Fourteenth Amendment, rendering the former a nullity. Although we agree that the Privileges and Immunities Clause and Equal Protection Clause are not co-extensive and that "fundamental" under the Privileges and Immunities Clause may encompass some rights not guaranteed by the Fourteenth Amendment, appellants' argument nonetheless fails. First, appellants ignore the fact that the district court expressly noted that "there are two possible interpretations of this fundamentality requirement," 591 F.Supp. at 1540, and that the court tested appellants' claim under *both Camden and* traditional equal protection analysis. Appellants' claim failed each.

Second, in reaching its decision the district court took note of *Zeiler v. Ohio High School Athletic Ass'n.* No. C 83–765, slip op. (N.D.Oh. Feb. 3, 1984), *aff'd*, 755 F.2d 934 (6th Cir.1985), *cert. denied*, —— U.S. ——, 106 S.Ct. 63, 88 L.Ed.2d 51 (1985), in which the district court upheld Bylaw 4–6–10 against a nearly identical challenge. In *Zeiler,* the district court held that the right to participate in interscholastic sports is not a fundamental right within the meaning of the Privileges and Immunities Clause. Slip op. at 11. This court summarily affirmed that decision. Although *Zeiler* pre-dated *Camden* by a few weeks, the district court in *Zeiler* astutely utilized a *Camden*-type analysis by reading *Baldwin, supra*, which described "fundamental" for purposes of the Privileges and Immunities Clause, together with *Hicklin v. Overbeck*, 437 U.S. 518, 98 S.Ct. 2482, 57 L.Ed.2d 397 (1978), which did not discuss fundamentality, but which did test Alaska's hiring preference statute in terms of the state's justification for such. Slip op. at 11. (In doing so, the district court acknowledged following the lead of the Ninth Circuit, which in *Hawaii Boating*

*Ass'n v. Water Transportation Facility,* 651 F.2d 661 (9th Cir.1981), determined that a blending of the *Baldwin* and *Hicklin* cases would establish a correct two-pronged approach to the Privileges and Immunities Clause; *Camden* and *Piper* subsequently proved the propriety of the Ninth Circuit's approach.) Similarly, in the instant case the district court properly analyzed appellants' claim and found it lacking.

Appellants also suggest that the Supreme Court has moved away from a fundamental rights analysis and is concerned primarily with the reason for the discrimination against nonresidents and whether the discrimination is reasonably tailored to cure the particular "evil" caused by nonresidents. To support this proposition appellants point particularly to *Toomer, supra,* and *Hicklin, supra,* neither of which discuss the fundamental nature of the nonresidents' right asserted, but which only analyze the reason and justification for the discrimination. Appellants also cite Justice Brennan's dissenting opinion in *Baldwin,* 436 U.S. at 402, 98 S.Ct. at 1869, in which he stated that fundamentality is not a proper inquiry in Privileges and Immunities cases, and that only the state's justification for the discrimination is relevant. Appellants' reliance on *Toomer* and *Hicklin* is misplaced. In *Toomer,* the Supreme Court invalidated a South Carolina statute requiring non-residents to pay license fees one hundred times greater than resident fishermen had to pay. In *Hicklin,* the Supreme Court invalidated an Alaskan resident hiring preference statute. Both cases thus deal with the right to earn a livelihood, long recognized as a fundamental right under the Privileges and Immunities Clause. *See, e.g., Ward v. Maryland,* 12 Wall. 418, 20 L.Ed. 449 (1871). Therefore, the Supreme Court's relative silence on fundamentality in these cases must be viewed as reflecting the Court's implicit assumption of the fundamental nature of the right at issue. Further, the Supreme Court in *Toomer* recognized that "it was long ago decided that one of the privileges

which the clause guaranteed ... is that of doing business...." 334 U.S. at 396, 68 S.Ct. at 1162. Likewise, in *Hicklin* the Supreme Court observed that the "appellants' appeal to the protection of the Clause is strongly supported by this Court's decisions holding violative of the Clause state discrimination against non-residents seeking to ply their trade, practice their occupation, or pursue a common calling within the state." 437 U.S. at 524, 98 S.Ct. at 2487. It thus appears that, contrary to what appellants have asserted, the nature of the privilege was briefly, but definitely, considered in these two cases. Even more damaging and clearly fatal to appellants' argument are the most recent Supreme Court cases of *Camden* and *Piper* which, as discussed above, clearly require and emphasize consideration of the fundamentality of the right asserted under the Privileges and Immunities Clause. *Camden, supra,* 104 S.Ct. at 1027; *Piper, supra,* —— U.S. at ——, 105 S.Ct. at 1277.

Because we thus affirm the district court's finding that the right to participate in interscholastic sports is not a fundamental privilege within the meaning of the Privileges and Immunities Clause, we need not consider whether there is a substantial reason for Bylaw 4–6–10 and whether Bylaw 4–6–10 bears a substantial relation to the state's objective of eliminating unfair recruitment by private schools of out-of-state student athletes.

Accordingly, the judgment of the district court is

AFFIRMED.