**Carol DALY and Kathy Burgess, individually and on behalf of others similarly situated; Plaintiffs,**

**v.**

**Jeremy HARRIS, in his individual capacity, and his official capacity as Mayor of the City and County of Honolulu, et al.; Defendants.**

**No. CIV.01–00458 ACK/LEK.**

United States District Court,
D. Hawai'i.

June 24, 2002.

James J. Bickerton, Christine M. Daleiden, Bickerton, Saunders & Dang, Honolulu, HI, for plaintiffs.

David Z. Arakawa, Gary Y. Takeuchi, Office of Corporation Counsel, John T. Komeiji, Tracy J. Fujimoto, Watanabe Ing & Kawashima, Honolulu, HI, for defendants.

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS OR, ALTERNATIVELY FOR PARTIAL SUMMARY JUDGMENT FILED JANUARY 3, 2002

KAY, District Judge.

## BACKGROUND

This lawsuit involves a challenge to the City and County of Honolulu's practice of charging non-residents a $3.00 fee to enter Hanauma Bay, which is designated a marine life conservation district and nature preserve and serves as an underwater park and fish sanctuary (hereinafter "Hanauma Bay"). Hanauma Bay contains a beautiful cove and beach located on the south-east side of Oahu and is popular with both local residents and particularly tourists for activities such as snorkeling amongst the protected fish, swimming, learning about our marine ecosystem, exploring the shoreline, sunbathing and picnicking. The Hanauma Bay Marine Life Conservation regulations prohibit Hawaii residents, as well as non-residents, from fishing, taking any marine life, coral or sand, boating and from certain other activities.[1] *See* HAW. ADMIN. R. § 13–28–2.

1. The Court finds it highly relevant that the beach at Hanauma Bay is not an ordinary

In 1996, the Honolulu City Council enacted Ordinance Number ("No.") 96–19 which instituted a $3.00 fee for non-residents seeking entry to Hanauma Bay and a $1.00 parking fee for all visitors. Ordinance No. 96–19, codified at Sec. 10–2.11 of the Revised Ordinances of Honolulu ("ROH"), provides in relevant part:

(a) The following fees shall be assessed for entrance to the Hanauma Bay Nature Preserve:

(1) For nonresidents of Hawaii, 13 years of age and older, to enter the lower preserve (beyond the scenic lookout): $3.00 per person.

(2) For vehicles entering the preserve, a $1.00 parking fee shall be assessed; provided that this parking fee shall be refunded for all vehicles departing from the preserve within 15 minutes of their entry.

(b) The director of parks and recreation is authorized to waive the fees provided by this section and to allow entry of any person to the Hanauma Bay Nature Preserve as part of an educational or promotional program

or package made available or authorized by the city.

REVISED ORDINANCES OF HONOLULU § 10–2.11 (2001). Ordinance No. 96–19 also establishes the Hanauma Bay Nature Preserve Fund, the related provisions of which are codified at ROH Sections 6–51.1 through 6–51.4. ROH Section 6–51.2, regarding the Purpose of the Fund, provides:

There shall be deposited into the Hanauma Bay Nature Preserve fund all receipts from the fees imposed under Section 10–2.11 and all concession revenues from the Hanauma Bay Nature Preserve concessions. All moneys deposited into this fund shall be used for the following purposes in order of priority as indicated:

(1) First, for the operation, maintenance and improvement of the Hanauma Bay Nature Preserve;

(2) Second, for educational and orientation programs for visitors to the preserve;

(3) Third, for carrying capacity study of the preserve and for other studies relating to the environmental condition of the preserve; and

---

beach; Hanauma Bay is designated as a Marine Life Conservation District, governed by H.R.S. Chapter 190 and Hawaii Administrative Rules ("H.A.R.") Title 13 (Department of Land and Natural Resources), Chapter 28. H.A.R. Section 13–28–2 provides in relevant part that no person shall, at Hanauma Bay:

(1) Fish for, catch, take, injure ... or remove any finfish, crustacean, mollusk including sea shell and opihi, live coral, algae or limu, or other marine life, or eggs thereof;

(2) Take, alter, deface, destroy ... or remove any sand, coral, rock, or other geological feature or specimen;

(3) Have or possess any fishing gear or device, including but not limited to any hook-and-line, rod, reel, spear, trap, net, crowbar, or other device, or noxious chemical that may be used for the taking,

injuring, or killing of marine life, or the altering of geological feature or specimen, ...

(4) Introduce any food, substance, or chemical into the water, to feed or attract marine life.

HAW. ADMIN. R. § 13–28–2. The Hanauma Bay Marine Life Conservation District includes not only the area covered by the bay waters but also the beach. The district runs from the highwater mark at the shoreline (being the vegetation line, *see State v. Sotomura*, 55 Haw. 176, 182, 517 P.2d 57 (1973)) out to certain designated points offshore. *See id.* at § 13–28–1. Because Hanauma Bay is designated as a swimming and snorkeling zone, save two limited exceptions not available to recreational boaters, no watercraft of any description is permitted to operate or moor in the area. *Id.* at § 13–256–88.

(4) Fourth, if funds are available, for the operation, maintenance and improvement of the following park facilities: Koko Head District Park, Maunalua Bay Beach Park, Koko Head Rifle Range, and the Koko Crater Botanical Garden.

REVISED ORDINANCES OF HONOLULU § 6–51.2 (2001).

In October of 2000, Plaintiff Carol Daly, a California resident, visited Hanauma Bay. As she proceeded along the walkway to the beach, she came upon a city-erected turnstile at which she paid the $3.00 fee assessed for entry. In June of 2001, Plaintiff Cathy Burgess, then and currently a resident of Colorado, but formerly a Hawaii resident, visited Hanauma Bay for the purpose of having a family gathering. Plaintiff Burgess alleges that she and her family "sought to associate with each other, enjoy each other's company and communicate with each other about their respective lives and experiences." Second Amend. Compl. ("Compl.") ¶ 36. Unlike Plaintiff Daly, when Plaintiff Burgess arrived at the turnstile, she refused to pay the $3.00 fee and left without entering.

On July 10, 2001, Plaintiff Daly and Burgess (collectively "Plaintiffs") initiated this lawsuit against Defendants Jeremy Harris (in both his individual capacity and his official capacity as Mayor of the City and County of Honolulu), Caroll Takahashi (as Director of the Department of Budget and Fiscal Services), William Balfour (as Director of the Department of Parks and Recreation), and the City and County of Honolulu to challenge the $3.00 entry fee. Plaintiffs' Second Amended Complaint, filed on November 20, 2001, asserts the following claims: Count I (First Amendment), Count II (Violation of Hawaii Constitution), Count III (Violation of Hawaii

Revised Statutes ("H.R.S.") § 7–1 and Chapter 115), Count IV (Unauthorized Taxation), Count V (Privileges and Immunities), Count VI (Equal Protection), Count VII (Fourth Amendment), Count VIII (International Covenant on Civil and Political Rights),[2] Count IX (H.R.S. Chapter 480), Count X (Declaratory Judgment), Count XI (Injunctive Relief), Count XII (Common–Law Recovery Remedy), Count XIII (Unjust Enrichment Remedy), Count XIV (Constructive Trust) and Count XV (Punitive Damages).

On January 3, 2002, Defendants filed eight separate Motions to Dismiss with Prejudice or Alternatively, for Partial Summary Judgment with respect to Plaintiff's Claims relating to: (1) Count I (First Amendment), (2) Privilege and Immunities Clause, (3) Equal Protection Clause, (4) Fourth Amendment, (5) Count V (Violation of the International Covenant on Civil and Political Rights), (6) H.R.S. § 7–1, (7) H.R.S. Chapter 480, and (8) Claims against Jeremy Harris ("Defendants' Motions to Dismiss"). Plaintiffs filed Oppositions to all of Defendants' above-listed Motions, save Defendants' Motion regarding Count V (Violation of the International Covenant on Civil and Political Rights), on February 28, 2002. Likewise, Defendants replied with respect to all of its Motions except the Motion regarding Count V on March 7, 2002.

The hearing on Defendants' Motions to Dismiss were originally scheduled for March 18, 2002, however, on March 8, 2002, Plaintiffs filed a Motion for Class Certification pursuant to Federal Rules of Civil Procedure ("FRCP") Rule 23; consequently the March 18, 2002 hearing date was vacated. Defendants opposed class certification on April 4, 2002 and Plaintiffs

---

**2.** Plaintiffs indicated that they have agreed to voluntarily dismiss this claim in their Opposition to Plaintiffs' Motion to Dismiss, or Alternatively, for Partial Summary Judgment Regarding Plaintiffs' Claims under Count VII for Violations of the Fourth Amendment.

replied on April 11, 2002. The hearing on Plaintiffs' Motion for Class Certification was held on April 22, 2002. Three days later, on April 25, 2002, the Court issued an Order Granting in Part and Denying in Part Plaintiffs' Motion for Class Certification. While the Court found that the Class,[3] sub-class I [4] and sub-class II [5] (assumedly for analytical purposes) met the requirements of Rule 23(a), it denied certification of the Class and sub-class II and conditionally certified sub-class I (with respect to Counts II, III, IV, V, VI, VII, IX, X, XI, XII, XIII, XIV and XV), defined as (1) non-residents of Hawaii (2) who paid $3.00 to enter the beach area of Hanauma Bay (3) after July 10, 1999(4) who at the time of payment were U.S. Citizens, as a Rule 23(b)(3) class.

Plaintiffs timely sought partial reconsideration of the Court's April 25, 2002 Certification Order on May 9, 2002. After confirming that sub-class I alleged no consequential damages other than recovery of the $3.00 entry fee,[6] the Court denied Plaintiffs'[7] Motion for Reconsideration and revised, pursuant to FRCP 23(c)(1), its April 25, 2002 Order such that certification of sub-class I would be pursuant to Rule 23(b)(2) rather than (b)(3).

The Court heard oral argument on Defendants' Motions to Dismiss on June 17, 2002.

## STANDARD OF REVIEW

### I. MOTION TO DISMISS

Under Rule 12(b)(6), in determining whether a motion to dismiss for failure to state a claim upon which relief can be granted, this Court must accept as true the plaintiff's allegations contained in the complaint and view them in a light most favorable to the plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Wileman Bros. & Elliott, Inc. v. Giannini*, 909 F.2d 332, 334 (9th Cir.1990); *Shah v. County of Los Angeles*, 797 F.2d 743, 745 (9th Cir. 1986). Thus, the complaint must stand unless it appears beyond doubt that the plaintiff has alleged no facts that would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957); *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1988). A complaint may be dismissed as a matter of law for two reasons: (1) lack of a cognizable legal theory or (2) insufficient facts under a cognizable legal theory. *Balistreri*, 901 F.2d at 699; *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 533–34 (9th Cir.1984).

In essence, as the Ninth Circuit has stated, "[t]he issue is not whether a plaintiff's success on the merits is likely but rather whether the claimant is entitled to proceed beyond the threshold in attempt-

---

**3.** Plaintiffs' proposed Class was defined as "non-residents of Hawaii who have been required to pay $3.00 to access the public beach at Hanauma Bay." *See* Order, filed 4/25/02, at 7.

**4.** Plaintiffs' proposed sub-class I was defined as "those non-residents who have paid the $3.00 access fee." *See* Order, filed 4/25/02, at 7.

**5.** Plaintiffs' proposed sub-class II was defined as "those non-residents who have been unable or unwilling to access the beach at Hanauma Bay, despite a desire to do so, as the result of

the imposition of the $3.00 access fee." *See* Order, filed 4/25/02, at 7.

**6.** Plaintiffs' counsel represented, upon inquiry by the Court at a brief hearing held on May 29, 2002, that the members of sub-class I alleged no consequential damages other than the $3.00 entry fee paid.

**7.** For the sake of convenience, hereinafter, the term "Plaintiffs" refers to members of sub-class I, including Plaintiff Daly. Plaintiff Burgess, not a class member, is referred to as "Plaintiff Burgess."

ing to establish his claims." *De La Cruz v. Tormey,* 582 F.2d 45, 48 (9th Cir.), *cert. denied,* 441 U.S. 965, 99 S.Ct. 2416, 60 L.Ed.2d 1072 (1979). The Court must determine whether or not it appears to a certainty under existing law that no relief can be granted under any set of facts that might be proved in support of plaintiffs' claims. *Id.*

A motion under Rule 12(b)(6) should also be granted if an affirmative defense or other bar to relief is apparent from the face of the Complaint, such as lack of jurisdiction or the statute of limitations. 2A J. MOORE, W. TAGGART & J. WICKER, MOORE'S FEDERAL PRACTICE ¶ 12.07 at 12–68 to 12–69 (2d ed.1991 & supp. 1191–92) (citing *Imbler v. Pachtman,* 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976)) (emphasis added).

## II. SUMMARY JUDGMENT

Summary judgment shall be granted where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R.Civ.P. 56(c). The standard for summary adjudication is the same. *See State of Cal. v. Campbell,* 138 F.3d 772, 780 (9th Cir. 1998). One of the principal purposes of the summary judgment procedure is to identify and dispose of factually unsupported claims and defenses. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The United States Supreme Court has declared that summary judgment must be granted against a party who fails to demonstrate facts to establish an element essential to his case where that party will bear the burden of proof of that essential element at trial. *See id.* at 322, 106 S.Ct. 2548. "If the party moving for summary judgment meets its initial burden of identifying for the court the portions of the materials on file that it believes demonstrate the absence of any genuine issue of

material fact, the nonmoving party may not rely on the mere allegations in the pleadings in order to preclude summary judgment." *T.W. Elec. Serv. v. Pacific Elec. Contractors Ass'n,* 809 F.2d 626, 630 (9th Cir.1987) (citations omitted).

Rather, Rule 56(e) requires that the nonmoving party set forth, by affidavit or as otherwise provided in Rule 56, specific facts showing that there is a genuine issue for trial. *See id.* at 630. At least some "significant probative evidence tending to support the complaint" must be produced. *Id.* Legal memoranda and oral argument are not evidence and do not create issues of fact capable of defeating an otherwise valid motion for summary judgment. *See British Airways Bd. v. Boeing Co.,* 585 F.2d 946, 952 (9th Cir.1978).

The standard for a grant of summary judgment reflects the standard governing the grant of a directed verdict. *See Eisenberg v. Ins. Co. of North America,* 815 F.2d 1285, 1289 (9th Cir.1987) (*citing Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). Thus, the question is whether "reasonable minds could differ as to the import of the evidence." *Anderson,* 477 U.S. at 250–51, 106 S.Ct. 2505.

The Ninth Circuit has established that "[n]o longer can it be argued that any disagreement about a material issue of fact precludes the use of summary judgment." *California Architectural Bldg. Products, Inc. v. Franciscan Ceramics, Inc.,* 818 F.2d 1466, 1468 (9th Cir.1987). Moreover, the United States Supreme Court has stated that "[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

Indeed, "if the factual context makes the nonmoving party's claim *implausible,* that party must come forward with more persuasive evidence than would otherwise be necessary to show that there is a genuine issue for trial." *Franciscan Ceramics,* 818 F.2d at 1468 (emphasis in original) (citing *Matsushita,* 475 U.S. at 587, 106 S.Ct. 1348). Of course, all evidence and inferences to be drawn therefrom must be construed in the light most favorable to the nonmoving party. *See T.W. Elec. Serv.,* 809 F.2d at 630–31.

## *DISCUSSION*

### I. DEFENDANTS' MOTION TO DISMISS OR ALTERNATIVELY FOR PARTIAL SUMMARY JUDGMENT AS TO COUNT I (FIRST AMENDMENT)

Through their Motion, Defendants move the Court to dismiss, or alternatively to grant partial summary judgment in their favor, on Count I (First Amendment) of the Second Amended Complaint. Defendants argue that the activities Plaintiff Burgess seeks to engage in at Hanauma Bay do not fall within the speech and associational rights afforded by either the First Amendment to the United States Constitution or Article I, Section 4 of the Hawaii Constitution. Plaintiff Burgess, on the other hand, argues the following: Hanauma Bay is a traditional public forum and as such, Defendants cannot restrict access to it for a class of persons without a compelling justification; that the $3.00 fee unconstitutionally burdens/places a tax on expression; that the ordinance is overbroad; and that the fee is not necessary to serve a compelling state interest nor narrowly drawn to achieve that interest.

▮ The First Amendment to the United States Constitution provides:

Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.

U.S. CONST. amend. I. Similarly, Article I, Section 4 of the Hawaii Constitution provides in relevant part:

No law shall be enacted respecting an establishment of religion, or prohibiting the free exercise thereof, or abridging the freedom of speech or of the press or the right of the people peaceably to assemble and to petition the government for a redress of grievances.

HAW. CONST. Art. I, § 4. The rights afforded by Article I, Section 4 of the Hawaii Constitution are identical to that of the First Amendment to the United States Constitution. *See In re Doe,* 76 Hawai'i 85, 94 n. 16, 869 P.2d 1304 (1994) ("The rights specified in this section virtually unchanged since statehood, are often referred to as 'first amendment rights' because they are identical to those found in the first amendment to the United States Constitution."); *see also Estes v. Kapiolani Women's & Children's Med. Center,* 71 Haw. 190, 197, 787 P.2d 216 (1990) (language of Hawaii Constitution nearly identical to First Amendment and thus adoption of federal cases construing First Amendment rights appropriate). As the courts of Hawaii have relied on federal caselaw interpreting the First Amendment to the United States Constitution in defining the rights afforded by Article I, Section 4 of the Hawaii Constitution, so too will this Court.

In establishing the right to free speech, the Framers sought "to assure unfettered interchange of ideas for the bringing about of political and social changes desired by the people." *Roth v. United States,* 354 U.S. 476, 484, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957). The First Amendment, however, clearly does not sanction "every ut-

terance." *Id.* at 483, 77 S.Ct. 1304. Logically, therefore, the first step in the Court's "free speech" analysis is to determine whether Plaintiffs' contemplated activities constitute "speech" protected by the First Amendment. *See Cornelius v. NAACP Legal Defense & Educ. Fund, Inc.,* 473 U.S. 788, 797, 105 S.Ct. 3439, 87 L.Ed.2d 567 (1985) ("we need go no further" if speech is not protected by the First Amendment). If answered affirmatively, it then becomes necessary to identify the nature of the forum, and then finally to "assess whether the justifications for exclusion from the relevant forum satisfy the requisite standard." *Id.*

Insofar as Plaintiff Burgess challenges the entry fee as having effected a violation of her First Amendment free speech and associational rights, she alleges that she and her relatives "sought to associate with each other, enjoy each other's company and communicate with each other about their respective lives and experiences." Compl. ¶ 36. Plaintiff Burgess further alleges that individuals "have engaged and continue to engage in expressive and associational activities" at Hanauma Bay. Compl. ¶ 39.

▮ The Court finds that the communications Plaintiff Burgess alleges were suppressed by ROH Sec. 10–2.11 do not constitute speech protected by the First Amendment. While the Court acknowledges that "speech is protected ... even if it is merely informative and does not actually convey a position on a subject matter,"

*Giebel v. Sylvester,* 244 F.3d 1182 (9th Cir.2001) (quoting *Village of Schaumburg v. Citizens for a Better Environment,* 444 U.S. 620, 632, 100 S.Ct. 826, 63 L.Ed.2d 73 (1980)), conversations about one's life experiences with relatives is akin to unprotected "[c]asual chit-chat between two persons or ... confined to a small social group." *Swank v. Smart,* 898 F.2d 1247, 1251 (7th Cir.1990); *see also Dambrot v. Central Michigan Univ.,* 55 F.3d 1177, 1189 (6th Cir.1995) ("The linchpin of the inquiry is ... the extent to which the speech advances an idea transcending personal interest or opinion which impacts our social and/or political lives."). The contemplated conversation and association for the purposes of engaging in such conversation,[8] though literally speech and association, do not advance "knowledge, the transformation of taste, political change, cultural expression, and the other objectives, values and consequences of the speech that is protected by the First Amendment." *Swank,* 898 F.2d at 1251. Additionally, Plaintiff Burgess does not suggest that the purpose behind her contemplated conversations was to take positions on public questions or matters of social concern. *See City of Dallas v. Stanglin,* 490 U.S. 19, 25, 109 S.Ct. 1591, 104 L.Ed.2d 18 (1989); *Bd. of Directors of Rotary Int'l v. Rotary Club of Duarte,* 481 U.S. 537, 538–39, 107 S.Ct. 1940, 95 L.Ed.2d 474 (1987) (association for purpose of providing humanitarian service). Thus, ROH Sec. 10–2.11 did not effect a constitutional deprivation as applied to Plaintiff Burgess.

---

**8.** The Court acknowledges that "implicit in the right to engage in activities protected by the First Amendment [is] a corresponding right to associate with others in pursuit of a wide variety of political, social, economic, educational, religious, and cultural ends." *Roberts v. United States Jaycees,* 468 U.S. 609, 621, 104 S.Ct. 3244, 82 L.Ed.2d 462 (1984). However, if the contemplated activity does not fall within the protections of the First Amendment, association for the purpose of pursuit of that activity likewise is not protected. *See City of Dallas v. Stanglin,* 490 U.S. 19, 24–25, 109 S.Ct. 1591, 104 L.Ed.2d 18 (1989) (activity of dance hall patrons-coming together to engage in recreational dancing-not form of "expressive association"); *Swank,* 898 F.2d at 1250 ("The purpose of the free-speech clause and of its judge-made corollary the right of association is to protect the market in ideas ....").

Relying on *Perry Education Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 103 S.Ct. 948, 74 L.Ed.2d 794 (1983), Plaintiff Burgess vigorously argues that Hanauma Bay's status as a traditional public forum prohibits the City from burdening her right to converse about her personal life and associate with her relatives for the purpose of pursuing these conversations. However, as set forth above, consideration of the nature of the forum is secondary to deciding whether the contemplated activity is speech protected by the First Amendment. *See Cornelius*, 473 U.S. at 797, 105 S.Ct. 3439 (if contemplated activity is not speech protected by the First Amendment, "we need go no further"). *Perry*, 460 U.S. 37, 103 S.Ct. 948, 74 L.Ed.2d 794 (1983), does not hold otherwise. In *Perry*, unlike their rival teacher union, the Perry Local Educator's Association (PLEA) was denied access to a school's internal mailbox system. *Id.* at 40–41, 103 S.Ct. 948. PLEA's contemplated activity, the transmission of messages and communication with current and potential members regarding matters of union concern, though the Court did not explicitly state,[9] ostensibly falls within the parameters of protected speech. Thus, the *Perry* Court's consideration of the nature of the mailbox system as either a public or private forum cannot be seen as dispensing with the requirement that the contemplated activity must first constitute protected speech. *See Perry Educ. Ass'n*, 460 U.S. at 45, 103 S.Ct. 948 ("In places which by long tradition or by government fiat have been devoted to assembly and debate, the rights of the state to limit *expressive activity* are sharply circumscribed.") (emphasis added). As the Court

has concluded that the activities alleged by Plaintiff Burgess do not constitute speech protected by the First Amendment, it does not reach the question of whether Hanauma Bay is properly characterized as a traditional public forum[10] or whether the $3.00 entrance fee is narrowly tailored to achieve a compelling state interest.

■ In addition to challenging the ordinance as applied to herself, Plaintiff Burgess also mounts an overbreadth challenge. Plaintiffs "may seek directly on their own behalf the facial invalidation of overly broad statutes that 'create an unacceptable risk of the suppression of ideas.' " *Nunez v. City of San Diego*, 114 F.3d 935, 949 (9th Cir.1997) (quoting *Secretary of State of Maryland v. Joseph H. Munson Co.*, 467 U.S. 947, 965 n. 13, 104 S.Ct. 2839, 81 L.Ed.2d 786 (1984)). The Ninth Circuit permits facial attacks of statutes (or ordinances) that chill exercise of First Amendment rights only if "the challenged statute 'is directed narrowly and specifically at expression or conduct commonly associated with expression.' " *Roulette v. City of Seattle*, 97 F.3d 300, 305 (9th Cir.1996) (quoting *City of Lakewood v. Plain Dealer Publishing Co.*, 486 U.S. 750, 760, 108 S.Ct. 2138, 100 L.Ed.2d 771 (1988)).

Like the juvenile curfew ordinance challenged in *Nunez v. City of San Diego*, 114 F.3d 935 (9th Cir.1997), the $3.00 fee inhibits conduct, not speech. *Id.* at 950. ROH Section 10–2.11 "does not disproportionately burden those engaged in First Amendment activities more than it burdens [those engaging in] other activities." *Id.* Thus, whether the ordinance is facially overbroad turns on whether the conduct burdened-going to Hanauma Bay or en-

---

9. The *Perry* Court likely found that exhaustive analysis of this issue was unnecessary. *See Perry Educ. Ass'n*, 460 U.S. at 44, 103 S.Ct. 948 ("There is no question that constitutional interests are implicated by denying PLEA use of the interschool mail system.").

10. The Court emphasizes that Hanauma Bay is not merely a beach, but a nature preserve and conservation district.

gaging in recreational and educational activities at Hanauma Bay-is "conduct commonly associated with expression." *Id.* at 950 ("[G]enerally applicable regulations of conduct implicate the First Amendment only if they (1) impose a disproportionate burden on those engaged in First amendment activities; or (2) constitute governmental regulation of conduct with an expressive element.").

■ The line separating unprotected conduct from sufficiently expressive conduct is not easily drawn. While it is well-settled that the activity need not involve spoken or written words to constitute "speech," *see Spence v. State of Washington*, 418 U.S. 405, 409, 94 S.Ct. 2727, 41 L.Ed.2d 842 (1974), *Roulette v. City of Seattle*, 97 F.3d 300, 302–03 (9th Cir.1996), the United States Supreme Court has rejected, on more than one occasion, the "view that an apparently limitless variety of conduct can be labeled 'speech' whenever the person engaging in the conduct intends thereby to express an idea." *Spence*, 418 U.S. at 409, 94 S.Ct. 2727 (1974) (citing *United States v. O'Brien*, 391 U.S. 367, 376, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968)); *see also City of Dallas v. Stanglin*, 490 U.S. 19, 25, 109 S.Ct. 1591, 104 L.Ed.2d 18 (1989) ("It is possible to find some kernel of expression in almost every activity a person undertakes-for example, walking down the street or meeting one's friends at a shopping mall-but such a kernel is not sufficient to bring the activity within the protection of the First Amendment."). The First Amendment affords protection to activity when "combined with the factual context and environment in which it [is to be] undertaken" is "sufficiently imbued with elements of communication." *Spence*, 418 U.S. at 409–10, 94 S.Ct. 2727.

■ The Court finds that lying or sitting on the beach,[11] snorkeling amongst protected fish, learning about Hanauma Bay's ecosystem, swimming or engaging in other recreational beach activities, as is commonly done at Hanauma Bay, is conduct not "sufficiently imbued with elements of communication." The typical visitor[12] does not, through his or her mere presence at Hanauma Bay or by partaking in activities common to Hanauma Bay, wish to communicate a message or express support for some cause. Nor does the average visitor view those who he or she encounters at the beach as making such a statement. *See Roulette*, 97 F.3d at 303 (quoting *Spence v. Washington*, 418 U.S. 405, 410–11, 94 S.Ct. 2727, 41 L.Ed.2d 842 (1974), for the proposition that conduct amounts to expression when "an intent to convey a particularized message [is] present, and . . . the likelihood [is] great that the message would be understood by those who viewed it"); *cf. Giebel v. Sylvester*, 244 F.3d 1182, 1186 (9th Cir.2001) (handbills posted for the purpose of conveying information and that do convey information to the extent they are observed consti-

11. The Court recognizes that the context in which the conduct takes place can add to or detract from the conduct's expressive qualities. In *Stone v. Agnos*, 960 F.2d 893 (9th Cir.1992), the Plaintiff, a homeless man, argued "that his sleeping in a public place 'dramatized' the plight of the homeless." *Id.* at 895. Though the Ninth Circuit did not decide the issue, conceivably conduct such as sleeping which is typically not expressive could be seen as conveying a message. Plaintiff Burgess has not demonstrated why non-expressive conduct such as lying, sitting, or playing at the beach somehow transmits a special message by virtue of its taking place at Hanauma Bay.

12. The Court clarifies that although visitors partake in certain beach activities, Hanauma Bay, as a nature preserve and conservation district, also provides educational opportunities and experiences not available in ordinary beach settings.

tute protected speech). Going to the beach and engaging in common beach activities lacks the requisite expressive element necessary to bring such conduct within the realm of First Amendment protection. *Cf. Roulette*, 97 F.3d at 303–04 (sitting or lying on sidewalk not integral to or commonly associated with expression), *Stanglin*, 490 U.S. at 25, 109 S.Ct. 1591 (association for purposes of recreational dancing not protected by the First Amendment), *MacDonald v. Newsome*, 437 F.Supp. 796, 797–98 (E.D.N.C.1977) (listing cases that "demonstrate that certain 'conduct' which involves an individual's participation with the natural elements does not warrant First Amendment protection"). As ROH Section 10–2.11, by its terms, merely inhibits going to Hanauma Bay, "conduct [not] integral to, or commonly associated with, expression," the Court rejects Plaintiff Burgess' facial challenge.[13] *Roulette*, 97 F.3d at 305.

Accordingly, the Court GRANTS Defendants' Motion to Dismiss with Prejudice, or, Alternatively for Partial Summary Judgment as to Count I of the Second Amended Complaint.

**II. DEFENDANTS' MOTION TO DISMISS WITH PREJUDICE, OR, ALTERNATIVELY FOR PARTIAL SUMMARY JUDGMENT REGARDING PLAINTIFFS' CLAIMS FOR VIOLATIONS OF THE PRIVILEGES AND IMMUNITIES CLAUSE**

■ Succinctly stated, Defendants argue that the Privileges and Immunities Clause of the United States Constitution is of no avail to Plaintiffs because it protects "fundamental rights," none of which are at stake in the instant litigation. Plaintiffs contend that the rights claimed-right of access to a public forum, right to intrastate travel, right of access to the beach and shoreline in Hawaii—are "fundamental." Plaintiffs further contend that the discriminatory $3.00 entry fee does not pass Constitutional muster because "nonresidents are not the source of any evil the city seeks to remedy." *See* Plts' Opp. at 12.

Article IV, Section 2 of the United States Constitution, insofar as it is relevant to the instant case provides:

> The Citizens of each State shall be entitled to all Privileges and Immunities of Citizens in the several States.

U.S. CONST. art. I, § 2.[14] The purpose of the Privileges and Immunities Clause, as stated by the United States Supreme Court, is to:

> place the citizens of each State upon the same footing with citizens of other States, so far as the advantages resulting from those States are concerned. It relieves them from the disabilities of alienage in other States; it inhibits discriminating legislation against them by other States; it gives them the right of free ingress into other States, and egress from them; it insures to them in other States the same freedom possessed by the citizens of those States in the acquisition and enjoyment of property and in the pursuit of happiness; and

---

**13.** The Court finds that *Nunez*, a case in which the Ninth Circuit struck down a curfew ordinance, is distinguishable in that ROH Sec. 10–2.11's imposition of the $3.00 entry fee does not restrict "access to any and all public forums" and does not have "an integral effect on the ability of [nonresidents] to express themselves." *Nunez*, 114 F.3d at 950–51.

**14.** The Privileges and Immunities Clause applies to municipalities as well as states. *See City of Camden*, 465 U.S. at 215, 104 S.Ct. 1020 ("It is as true of the Privileges and Immunities Clause as of the Equal Protection Clause that what would be unconstitutional if done directly by the State can no more readily be accomplished by a city deriving its authority from the State.").

it secures to them in other States the equal protection of their laws.

*Hicklin v. Orbeck,* 437 U.S. 518, 524, 98 S.Ct. 2482, 57 L.Ed.2d 397 (1978) (quoting *Paul v. Virginia,* 8 Wall. 168, 180, 19 L.Ed. 357 (1868)); *see also Toomer v. Witsell,* 334 U.S. 385 395, 68 S.Ct. 1156, 92 L.Ed. 1460 (1948) (Privileges and Immunities Clause "designed to insure to a citizen of State A who ventures into State B the same privileges which the citizens of State B enjoy").

■ Though these oft-cited propositions seemingly insure nonresidents' rights to a range of activities enjoyed by instate residents, the Privileges and Immunities analysis has evolved such that this Court must first determine whether the right at stake is "fundamental." *See United Bldg. & Const. Trades Council of Camden County & Vicinity v. Mayor & Council of City of Camden,* 465 U.S. 208, 218–19, 104 S.Ct. 1020, 79 L.Ed.2d 249 (1984); *Baldwin v. Fish & Game Comm'n of Montana,* 436 U.S. 371, 387, 98 S.Ct. 1852, 56 L.Ed.2d 354 (1978). Rights that are not "fundamental" do not "come within the purview of the Privileges and Immunities Clause." *Hawaii Boating Ass'n v. Water Trans. Facilities Div.,* 651 F.2d 661, 667 (9th Cir. 1981); *City of Camden,* 465 U.S. at 218, 104 S.Ct. 1020. A state need not apply all of its laws and all of its services equally to residents and nonresidents alike, *see Baldwin,* 436 U.S. at 384, 98 S.Ct. 1852 (citing *Canadian N.R. Co. v. Eggen,* 252 U.S. 553, 40 S.Ct. 402, 64 L.Ed. 713 (1920)), but must justify its choice to discriminate if the right at stake is "fundamental" in the context of the Privileges and Immunities Clause. *See Hawaii Boating Ass'n,* 651

F.2d at 667 (noting that *Hicklin* did not "signal abandonment of the 'fundamental' right approach"); *see also City of Camden,* 465 U.S. at 222, 104 S.Ct. 1020 (even if privilege protected, discrimination not precluded where there is a substantial reason for the difference in treatment).

The "privileges" and "immunities" (i.e. "fundamental rights") afforded constitutional protection are limited to that which "bear upon the vitality of the Nation as a single entity" and those "basic and essential activities, interference with which would frustrate the purposes of the Union." *Baldwin,* 436 U.S. at 383, 387, 98 S.Ct. 1852. The specific right to practice one's occupation (or engage in lawful commerce, trade, or business) in the State, to procure medical services, to own and dispose of privately held property within the state, to access the courts of the State, and to interstate travel [15] have been judicially recognized as "fundamental" in the context of the Privileges and Immunities Clause. *See Saenz v. Roe,* 526 U.S. 489, 502, 119 S.Ct. 1518, 143 L.Ed.2d 689 (1999), *Baldwin,* 436 U.S. at 383, 98 S.Ct. 1852; *Hicklin,* 437 U.S. at 524, 98 S.Ct. 2482.

Plaintiffs argue that the following rights qualify as "fundamental" for purposes of the Privileges and Immunities Clause: (1) right of access to a public forum, (2) right to intrastate travel and (3) right of access to the beach and shoreline. The Court will consider each in turn.

With respect to Plaintiffs' alleged right to access a public forum, the Court finds that such a right is secured for all United States citizens, regardless of their residency in a particular state, by the First

---

**15.** Although the constitutional source of the "right to travel" is disputed, *see United States v. Guest,* 383 U.S. 745, 758, 86 S.Ct. 1170, 16 L.Ed.2d 239 (1966) (noting that "there have been recurring differences in emphasis within the Court as to the source of the constitution-

al right of interstate travel"), the Supreme Court acknowledged that the Privileges and Immunities clause protects at least one component of the "right to travel." *See Saenz v. Roe,* 526 U.S. 489, 501, 119 S.Ct. 1518, 143 L.Ed.2d 689 (1999).

Amendment. Thus, the Court finds that the right to access a public forum is properly analyzed against First Amendment jurisprudence rather than the Privileges and Immunities Clause.[16] Alternatively, the Court is unaware of, and Plaintiffs have failed to identify, authority recognizing that the right of access to a public forum is "fundamental" in the context of the Privileges and Immunities Clause.[17]

Plaintiffs argue next that the right to intrastate travel-in the sense that one has the right to physically move about the state and through the state-is "fundamental." In the recently decided case *Saenz v. Roe*, 526 U.S. 489, 119 S.Ct. 1518, 143 L.Ed.2d 689 (1999), the United States Supreme Court recognized three components of the "right to travel"; Plaintiffs intrastate travel/freedom of movement argument seems most akin to the first component: "the right of a citizen of one State to enter and to leave another State." *Id.* at 501, 119 S.Ct. 1518; *see also* Plts' Opp. at 9 ("The Baldwin court endorsed the articulation of fundamental rights ... includ[ing] the 'right of a citizen to pass through, or to reside in any other state ....' "). Notably, while attributing the second component of the right to travel, namely "the right to be treated as a welcome visitor rather than an unfriendly alien when temporarily present in the second State," as arising from the Privileges and Immunities Clause,[18] *id.* at 501, 119 S.Ct. 1518, the *Saenz* Court did not pass upon the Constitutional source of the first component. *See id.* ("[W]e need not identify the source of that particular right in the text of the Constitution."). The Court finds that Plaintiffs' right to intrastate travel/freedom of movement (component 1 of the right to travel) claim is most appropriately addressed in conjunction with Plaintiffs' Equal Protection challenge.[19] *Cf.*

---

**16.** Though the Privileges and Immunities Clause was not in issue, the Ninth Circuit took a similar approach in *Nunez* when analyzing "fundamental rights" in the Equal Protection context and the First Amendment. *See Nunez v. City of San Diego*, 114 F.3d 935, 944 n. 6 (9th Cir.1997) ("The rights of free movement and travel and the right to free expression are integral to our analysis of the [sic] whether the ordinance unconstitutionally burden minors' fundamental rights. We discuss them separately for clarity's sake; courts have articulated different tests to examine burdens on First Amendment rights and on other fundamental rights."). Additionally, the Court finds that the contemplated activity at Hanauma Bay is not sufficiently expressive so as to receive protection under the First Amendment. *See supra* Section I.

**17.** Like the Sixth Circuit Court of Appeals, this Court is of the view that the "fundamental rights" of the Privileges and Immunities Clause and those recognized in the context of the Fourteenth Amendment are not one and the same. *Alerding v. Ohio High School Athletic Ass'n*, 779 F.2d 315, 318 (6th Cir.1985). The Court is not persuaded that all rights protected by the Fourteenth Amendment are necessarily "fundamental" for purposes of the Privileges and Immunities Clause. *See id.* ("we agree that the Privileges and Immunities Clause and Equal Protection Clause are not co-extensive"); *but see* Plts' (Privileges and Immunities) Opp. at 7 (citing *Friedman v. Supreme Court of Virginia*, 822 F.2d 423, 426 (4th Cir.1987), for the proposition that "[t]he Privileges and Immunities Clause protects more than those rights which are considered fundamental individual rights protected by the Fourteenth Amendment").

**18.** This, the second component of the right to travel is discussed infra with respect to Plaintiffs' argument that equality in access to Hanauma Bay is a fundamental Privileges and Immunities right.

**19.** The Court notes that Plaintiffs raise a similar and more lengthy argument in their Opposition to Defendants' Motion to Dismiss, or Alternatively, for Partial Summary Judgment Regarding Plaintiffs' Claims for Violations of the Equal Protection Clause. *See* Plts' Opp. at 15–19.

*Nunez*, 114 F.3d at 944–946 (fundamental right of free movement part of Equal Protection analysis); *Int'l Org. of Masters, Mates & Pilots v. Andrews*, 831 F.2d 843 (9th Cir.1987) (Privileges and Immunities analyzed separately from "right to travel" argument); *Hawaii Boating Ass'n*, 651 F.2d at 664 ("right to travel" analyzed as part of Equal Protection analysis); *Zobel v. Williams*, 457 U.S. 55, 60, 102 S.Ct. 2309, 72 L.Ed.2d 672 n.6 (1982) ("right to travel analysis refers to little more than a particular equal protection analysis").

Finally, Plaintiffs argue that (1) the right of access to the beach and shoreline is basic and fundamental in the State of Hawaii and thus (2) the right of beach access is fundamental under the Privileges and Immunities Clause (by virtue of the Equal Protection Clause). It appears that Plaintiffs argue that equal protection of the law is a "fundamental" Privilege and Immunities Clause right.

▮ The Court disagrees with Plaintiffs' contention, however. First, Plaintiffs cite no support for this proposition. Second, it is well-settled that the Equal Protection Clause "confers no substantive rights and creates no substantive liberties." *San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 59, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973) (Stewart, J., concurring) (noting one exception not applicable here); *Vacco v. Quill*, 521 U.S. 793, 799, 117 S.Ct. 2293, 138 L.Ed.2d 834 (1997) (Equal Protection Clause "creates no substantive rights," but "embodies a general rule that States must treat like cases alike but may treat unlike

cases accordingly"). Last, the Court rejects Plaintiffs' contention that the Privileges and Immunities Clause mandates the State of Hawaii to provide the same beach privileges (under the laws of Hawaii) to non-residents as it does for its own residents. The United States Supreme Court has clearly stated that the Privileges and Immunities Clause does not require that a "State always apply all its laws or all its services equally to anyone, resident or nonresident, who may request it so to do;" it is only those distinctions that "hinder the formation, the purpose or the development of a single Union of those States" that are prohibited. *Baldwin*, 436 U.S. at 383, 98 S.Ct. 1852 (citations omitted). Insofar as Plaintiffs argue that access to the beach is a cognizable fundamental right under the Privileges and Immunities Clause, this Court cannot agree. Like the right to hunt elk in Montana,[20] *see Baldwin*, 436 U.S. at 388, 98 S.Ct. 1852, the right to participate in interscholastic sports, *see Alerding*, 779 F.2d at 317, and the right to a berth in a recreational boat harbor, *see Hawaii Boating Assoc.*, 651 F.2d 661, neither the "vitality of the Nation as a single entity" nor the "maintenance or well-being of the Union" hinges on ensuring nonresidents' equality in access to Hanauma Bay. *Baldwin*, 436 U.S. at 383, 388, 98 S.Ct. 1852.

Accordingly, the Court GRANTS Defendants' Motion to Dismiss, or Alternatively, for Partial Summary Judgment With Respect to Plaintiffs' Claims for Violation of the U.S. Constitution's Privileges and Immunities Clause.

---

**20.** The circumstances of the instant case are exceptionally similar to that in *Baldwin* given the State's and City's efforts to preserve marine life and the ecological environment of Hanauma Bay. *Compare* HAW. ADMIN. R. § 13–28 (Hanauma Bay Marine Life Conservation District) with *Baldwin*, 436 U.S. at 373–376, 388, 98 S.Ct. 1852 (discussing expense and administration of elk management programs).

## III. DEFENDANTS' MOTION TO DISMISS, OR ALTERNATIVELY, FOR PARTIAL SUMMARY JUDGMENT REGARDING PLAINTIFFS' CLAIMS FOR VIOLATION OF THE U.S. CONSTITUTION'S EQUAL PROTECTION CLAUSE.

Defendants argue that Plaintiffs' reliance on the Equal Protection Clause is futile because Plaintiffs do not have a federally recognized fundamental right to go to the beach. Plaintiffs, on the other hand, contend that strict scrutiny review should be applied because the following rights are fundamental: (1) access to a public forum, (2) freedom of movement (which the Court interprets as including the right to travel, *see supra* Section II) and (3) the right to beach access in Hawaii.

The Fourteenth Amendment to the United States Constitution provides in relevant part:

No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; *nor deny to any person within its jurisdiction the equal protection of the laws.*

U.S. CONST. amend. 14, § 2 (emphasis added).[21] The Equal·Protection Clause seeks to ensure that "all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Center*, 473 U.S.

432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985) (citing *Plyler v. Doe*, 457 U.S. 202, 216, 102 S.Ct. 2382, 72 L.Ed.2d 786 (1982)). While statutes that classify on the basis of "race, alienage, or national origin" (suspect categories) and that "impinge on personal rights protected by the Constitution" are subject to strict scrutiny and will be upheld only if they "are suitably tailored to serve a compelling state interest," as a general rule, "legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest." *Id.* (citations omitted).

As a preliminary matter, the Court notes that although ROH § 10–2.11, on its face, classifies on the basis of residency, non-residents are not a judicially recognized suspect class. Plaintiffs do not argue the contrary. Thus, if heightened scrutiny is to be applied, the ordinance must infringe upon a "fundamental right."

Plaintiffs first argue that ROH Sec. 10–2.11 infringes on their fundamental right to access a public forum. The state's ability to restrict access to public forums is "sharply circumscribed" only when one seeks to engage in expressive activity.[22] *See Perry Educ. Ass'n*, 460 U.S. at 45, 103 S.Ct. 948. Where First Amendment rights are involved, a heightened level of scrutiny should be applied. *See Donrey Media Group v. Ikeda*, 959 F.Supp. 1280, 1285 (D.Haw.1996). For reasons discussed in Section I of this order,[23] the Court finds that ROH Sec. 10–2.11 regulates conduct,

---

**21.** Because "a municipality is merely a political subdivision of the State from which its authority derives," a municipality's acts must comport with the Equal Protection Clause. *City of Camden*, 465 U.S. at 215, 104 S.Ct. 1020.

**22.** As previously discussed, Plaintiff Burgess' contemplated activity does not amount to constitutionally protected speech and association. *See supra* Section I.

**23.** The *Nunez* Court analyzed the Plaintiffs' alleged deprivation of "the fundamental right

to freedom of expression" apart from Equal Protection as a First Amendment overbreadth challenge. *See Nunez*, 114 F.3d at 949–51. Arguably, the First Amendment's substantive guarantees provide the strongest protection for speech and expression-related association rights. *See* ROTUNDA AND NOWAK, 3 TREATISE ON CONSTITUTIONAL LAW § 18.40 (3d ed.1999); *see also Orin v. Barclay*, 272 F.3d 1207, 1213 n. 3 (9th Cir.2001) (treating Plaintiff's "equal protection claim as subsumed by, and co-extensive with, his First Amendment claim").

and does not impinge [24] on Plaintiffs' right to partake in First Amendment activity. Consequently, the Court will not apply heightened scrutiny on this ground.

▇ Plaintiffs next argue that ROH Sec. 10–2.11 impinges on their fundamental right to free movement and to interstate travel. The Ninth Circuit recognizes that citizens enjoy a "fundamental right of free movement" and a "fundamental right to interstate travel." *Nunez*, 114 F.3d at 944. The Supreme Court, in *Saenz v. Roe*, 526 U.S. 489, 119 S.Ct. 1518, 143 L.Ed.2d 689 (1999), stated that one component of the "right to travel" is the right of a citizen to enter and leave another state. *Id.* at 500, 119 S.Ct. 1518. The parameters of this component of the "right to travel" are far from clear. *See Chavez v. Illinois State Police*, 251 F.3d 612, 649 (7th Cir. 2001) (noting that "the scope of this component is not well defined because it has received only limited treatment from the Supreme Court"). Prior Supreme Court cases have vindicated the "right to go from one place to another, including the right to cross state borders while en route" and have "afforded protection to the 'right to travel freely to and from the state of Geor-

gia and to use highway facilities and other instrumentalities of interstate commerce within the State of Georgia.'" *See Saenz*, 526 U.S. at 500–01, 119 S.Ct. 1518 (referring to *Edwards v. California*, 314 U.S. 160, 62 S.Ct. 164, 86 L.Ed. 119 (1941), and *United States v. Guest*, 383 U.S. 745, 86 S.Ct. 1170, 16 L.Ed.2d 239 (1966)). The right prohibits "erection of actual barriers to interstate movement," *Zobel*, 457 U.S. at 60, 102 S.Ct. 2309, and statutes that "directly impair the exercise of the right to free interstate movement." *Saenz*, 526 U.S. at 501, 119 S.Ct. 1518.

▇ Although there exists support for Plaintiffs' contention,[25] the Court is skeptical that the right to free interstate movement is so broad as to encompass the right to physically move about every part of a state ("intrastate travel"). *See Nunez*, 114 F.3d at 944 n. 7 ("Other circuits are split as to whether the Constitution guarantees the right of intrastate travel. The Supreme Court has declined to decide the issue. We need not decide the issue in order to resolve this appeal, so we express no opinion on it.") (internal citations omitted). However, even assuming that such an expansive (equal protection) [26] right ex-

24. The Ninth Circuit regards infringement as effectuation of "a genuinely significant deprivation." *Barber v. State of Hawaii*, 42 F.3d 1185, 1197 (9th Cir.1994) ("To infringe upon a fundamental right, the regulation must impose a penalty effecting a genuinely significant deprivation of the basic necessities of life or the denial of a fundamental political right."). The Court notes that unlike the curfew ordinance in *Nunez*, ROH Sec. 10–2.11 does not affect Plaintiffs' ability to engage in First Amendment activity in any other public and private forum.

25. In concluding that elk hunting in Montana is not a fundamental Privileges and Immunities right, the *Baldwin* Court stated "Appellants do not-and cannot-contend that they are deprived of a means of a livelihood by the system or of access to any part of the State to which they may seek to travel." *Baldwin*,

436 U.S. at 388, 98 S.Ct. 1852. Additionally, in *Nunez*, the Ninth Circuit Court of Appeals cited *United States v. Wheeler*, 254 U.S. 281, 293, 41 S.Ct. 133, 65 L.Ed. 270 (1920), for the proposition that "In all the states from the beginning down to the adoption of the Articles of Confederation the citizens thereof possessed the fundamental right, inherent in citizens of all free governments, peacefully to dwell within the limits of their respective states, to move at will from place to place therein, and to have free ingress thereto and egress therefrom." *See Nunez*, 114 F.3d at 944. Notably, the "continuing validity" of the *Wheeler* decision was subsequently "restricted to its own facts" in *United States v. Guest*, 383 U.S. 745, 759 n. 16, 86 S.Ct. 1170, 16 L.Ed.2d 239 (1966).

26. The Constitutional source of this component of the right to travel is unclear. *See*

ists, the Court finds that ROH Sec. 10–2.11 does not "impinge" upon it.[27] *See Miller v. Reed,* 176 F.3d 1202, 1205 (9th Cir.1999) ("minor burdens impacting interstate travel, such as toll roads do not constitute a violation of that right"); *Barber v. State of Hawaii,* 42 F.3d 1185, 1197 (9th Cir.1994) ("To infringe upon a fundamental right, the regulation must impose a penalty effecting a genuinely significant deprivation ....."). The $3.00 fee is simply not a "significant penalty" on either the right to free movement or *Boating Assoc.,* 651 F.2d at 665;; *Attorney Gen. of New York v. Soto–Lopez,* 476 U.S. 898, 903, 106 S.Ct. 2317, 90 L.Ed.2d 899 (1986) ("A state law implicates the right to travel when it actually deters such travel, when impeding travel is its primary objective, or when it uses 'any classification which serves to penalize the exercise of that right' ") (citations omitted). Consequently, application of heightened scrutiny is inappropriate on these grounds.

[12] Finally, Plaintiffs argue that the right to free shoreline access is fundamental in Hawaii and that pursuant to the Ninth Circuit's decision in *Charfauros v. Bd. of Elections,* 249 F.3d 941 (9th Cir. 2001), such right "should be deemed fundamental for purposes of Equal Protection analysis." Plts' Opp. at 21. Defendants,

relying on *United States v. Clark,* 195 F.3d 446 (9th Cir.1999), *California v. LaRue,* 409 U.S. 109, 93 S.Ct. 390, 34 L.Ed.2d 342 (1972), and *Devereaux v. Perez,* 218 F.3d 1045 (9th Cir.2000), contend that Plaintiffs must establish that a fundamental federal right is at stake.[28] Defs' (Equal Protection) Mot. to Dismiss at 6. Defendants further argue that Hawaii does not recognize a fundamental right of free access to beaches. *See* Defs' Reply at 8.

It is well-settled in this, as well as in every jurisdiction that strict scrutiny is triggered when a statute "impinges upon a fundamental right." *See Nunez,* 114 F.3d at 944. Fundamental rights and liberty interests have been said to emanate from the penumbras of the Bill of Rights, *see Griswold v. Connecticut,* 381 U.S. 479, 484, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965). These rights are elevated to "fundamental" status because they are "so rooted in the traditions and conscience of our people" and "implicit in the concept of ordered liberty." *See Michael H. v. Gerald D.,* 491 U.S. 110, 127 n. 6, 109 S.Ct. 2333, 105 L.Ed.2d 91 (1989) (citing *Snyder v. Massachusetts,* 291 U.S. 97, 105, 54 S.Ct. 330, 78 L.Ed. 674 (1934), and *Palko v. Connecticut,* 302 U.S. 319, 325, 58 S.Ct. 149, 82 L.Ed. 288 (1937)). Logic dictates that "fundamental rights" as protected by the

*Saenz,* 526 U.S. at 501, 119 S.Ct. 1518 ("we need not identify the source of that particular right [right to 'free ingress and regress to and from neighboring States'] in the text of the Constitution").

27. At the hearing, Plaintiffs argued that the right to travel on public roads is a fundamental right. Assuming *arguendo* that this is true, though Plaintiffs provide no direct authority, the Ninth Circuit clearly sanctions toll charges. *See Miller,* 176 F.3d at 1205.

28. Like Plaintiffs, the Court cannot discern the relevance of *United States v. Clark,* 195 F.3d 446 (9th Cir.1999), to the issue at hand. Moreover, while Defendants correctly point

out that Section 1983 enforces federally created rights, though the Court concludes for other reasons, it does not logically follow from this proposition that "fundamental rights" as recognized by the Equal Protection Clause are exclusively federal in nature. The Court notes that individuals who have been denied equal protection of the law (ie. establish an Equal Protection violation) may seek redress under Section 1983. *See Hoffman v. Halden,* 268 F.2d 280, 293 (9th Cir.1959), *reversed on other grounds, Cohen v. Norris,* 300 F.2d 24 (9th Cir.1962) ("an action based on § 1983 is not limited to deprivation of due process, but extends also to denial of equal protection"), *French v. Heyne,* 547 F.2d 994, 997 (7th Cir.1976).

United States Constitution (on a national basis) are not particular to or created by individual states.[29]

*Charfauros v. Board of Elections,* 249 F.3d 941 (9th Cir.2001), does not hold the contrary. In *Charfauros,* four registered Republican voters were disqualified from voting in an election in the Northern Mariana Islands. The Ninth Circuit Court of Appeals, consistent with Equal Protection jurisprudence, first inquired and concluded that a fundamental right-the right to vote-was at stake. *Id.* at 950. Having reached this conclusion, the court noted that "the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution guarantees each and every person that they will not be denied their fundamental rights ... in an arbitrary or discriminatory manner." *Id.* at 951. The court then stated:

> In addition to protecting the exercise of federal constitutional rights, the Equal Protection Clause also prevents violations of rights guaranteed to the people by state governments-including the government of CNMI [Commonwealth of the Northern Mariana Islands]. The CNMI Constitution provides CNMI residents not only the right to vote but the right to vote by secret ballot. Thus, any restrictions placed on those rights must be scrutinized under the Equal Protection Clause.

*Id.*

Plaintiffs would have this Court read the above passage so as to elevate all rights recognized by state law as "fundamental" for Equal Protection purposes. *See* Plts' Opp. at 21. *Charfauros* does not support this contention. The "fundamental right" triggering Equal Protection concerns was not created by CNMI law; it was the long-recognized fundamental right to vote. *See Charfauros,* 249 F.3d at 950 ("Over a century ago, the United States Supreme Court held that the right to vote was a 'fundamental political right.'"). This right "is protected in more than the initial allocation of the franchise" as "[e]qual protection applies as well to the manner of its exercise." *See Bush v. Gore,* 531 U.S. 98, 104, 121 S.Ct. 525, 148 L.Ed.2d 388 (2000). Contrary to Plaintiffs' contention, in stating that "the Equal Protection Clause also prevents violations of rights guaranteed to the people by state governments," the *Charfauros* Court recognized that "having once granted the right to vote on equal terms, [a] State may not, by later arbitrary and disparate treatment, value one person's vote over that of another's," *Bush,* 531 U.S. at 104–05; it did not proclaim that all rights guaranteed by a state to its residents are "fundamental rights" for equal protection purposes. *See Charfauros,* 249 F.3d at 951 (referencing *Bush v. Gore,* 531 U.S. 98, 121 S.Ct. 525, 530, 148 L.Ed.2d 388 (2000)); *see also San Antonio Indep. Sch. Dist. v. Rodriguez,* 411 U.S. 1, 59 n. 2, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973) (Stewart, J., concurring) ("one notable exception" to the general rule that "the Equal Protection Clause confers no substantive rights and creates no substantive liberties" is that "the Equal protection Clause confers the substantive right to participate on an equal basis with other qualified voters whenever the State has adopted an electoral process for determining who will represent any segment of the State's population").

Additionally, *Charfauros* involved a dispute between CNMI residents over dispa-

---

**29.** In reaching this conclusion, the Court does not rely on *Clark,* cited by Defendants for the proposition that only fundamental federal rights trigger strict scrutiny. The Court is unaware of, and Plaintiffs do not proffer, any case in which a court looked to the traditions or law of an individual state in determining whether the right at stake was "fundamental" for Equal Protection purposes.

rate treatment, not discrimination against non-residents. Surely, a non-resident could not successfully argue that (s)he was entitled to vote in a CNMI election because such right was provided to CNMI residents. *See Baldwin,* 436 U.S. at 384, 98 S.Ct. 1852 ("Suffrage . . . always has been understood to be tied to an individual's identification with a particular State."). Plaintiffs interpretation of *Charfauros* is not consistent with the Supreme Court's holding in *Baldwin* or the Ninth Circuit's decisions in *Hawaii Boating Assoc.* and *Barber.* In these cases, according to Plaintiffs' reading of *Charfauros,* the right to hunt elk and to preferential mooring privileges, respectively, would have been deemed "fundamental" by virtue of the state statute's provision of the right to its own residents. Plaintiffs' reading of *Charfauros* is not supported by current Equal Protection jurisprudence or logic.

As the right to free access to Hanauma Bay cannot seriously be compared with rights emanating from the penumbras of the Bill of Rights and is far from being "implicit in the concept of ordered liberty," without passing upon whether Hawaii law provides such a right for its own residents,[30] the Court concludes that ROH Sec. 10–2.11 simply does not invoke heightened scrutiny under the Equal Protection Clause. Accordingly, the appropriate standard of review is rationality.[31]

In reviewing the rationality of the statute or ordinance as the case may be, this Court is reminded that "where neither a fundamental right nor a suspect classifica-

**30.** The Court notes that Defendants have not moved to dismiss or for partial summary judgment with respect to Count II (Violation of Hawaii Constitution). The Hawaii Supreme Court has recognized that Article I, section 2 of the Hawaii State Constitution secures for "the people of Hawaii" the "enjoyment of life, liberty and the pursuit of happiness," which includes "the right of men to move from place to place, to walk in the fields in the country or on the streets of a city, to stand under open sky in a public park and enjoy the fresh air, to lie down on a public beach and enjoy an evening together, and the right to associate with others in the enjoyment of an avocation or a vocation." *State v. Shigematsu,* 52 Haw. 604, 610, 483 P.2d 997 (1971) (State Constitution guarantees to the people of Hawaii the freedom of movement); *see also State v. French,* 77 Hawai'i 222, 231, 883 P.2d 644 (1994). Other sources of Hawaii law also appear to secure similar rights for Hawaii residents. For example, the preamble to Hawaii's Public Access to Coastal and Inland Recreational Areas statute, which provides a mechanism for counties to purchase land to establish public rights-of-way to the shoreline and other recreational areas, *see* Haw.Rev.Stat. § 115–2, states that "the absence of public access to Hawaii's shorelines and inland recreational areas constitutes an infringement upon the fundamental right of free movement in public space and access to

and use of coastal and inland recreational areas." Haw.Rev.Stat. § 115–1; S. REP. No. 841, at 12191 (1977) ("This bill would greatly increase the Department of Planning and Economic Development's efforts to assure the availability of, and accessibility to, adequate recreational, cultural and educational opportunities for the citizens of Hawaii."). Additionally, in holding that private beachfront property begins at the vegetation line (the highest wash of the waves), the Hawaii Supreme Court noted that "public policy . . . favors extending to public use and ownership as much of Hawaii's shoreline as is reasonably possible." *County of Hawaii v. Sotomura,* 55 Haw. 176, 182, 517 P.2d 57 (1973).

**31.** The Court observes that some people may feel that charging non-residents a fee to access Hanauma Bay is not consistent with the "aloha spirit." Others may believe that such a charge hurts our tourist industry and is counterproductive. On the other hand, others may feel that residents have already contributed to support of Hanauma Bay through payment of taxes. Moreover, charging a higher fee to non-residents in numerous instances is a customary practice. Ultimately, this is a decision for the legislative branch (City Council or State Legislature) to decide, provided their decision meets the rational basis standard.

tion is implicated, a classification 'must be upheld against an equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis' for it" and that "the drafters need not actually articulate this basis." *Hooks v. Clark County Sch. Dist.*, 228 F.3d 1036, 1042 (9th Cir.2000). Moreover, "when social or economic legislation is at issue, the Equal Protection Clause allows the States wide latitude . . . ." *City of Cleburne*, 473 U.S. at 440, 105 S.Ct. 3249.

Defendants do not provide evidence or argument in support of the rationality of ROH § 10–2.11's distinction between Hawaii residents and non-residents. Though the Court is inclined to find that there exists "a conceivable state of facts" that justifies drawing a distinction between residents and non-residents, Defendants have not come forth with any evidence to so establish.[32] Plaintiffs, on the other hand, proffer some (though not authenticated) evidence that the Hanauma Bay Nature Preserve Fund has been operating at a surplus and that funds from the preserve have been used for purposes not directly associated with maintenance of the bay. *See* Defs' Concise Statement of Facts at ¶ 22. Thus, on the current record, Plaintiffs have generated an issue of material fact sufficient to withstand Defendants' Motion for Partial Summary Judgment. With respect to Defendants' Motion to Dismiss, Plaintiffs' allege in their Second Amended Complaint that "there is no ra-

tional connection (i) between the residency status of Plaintiffs and others similarly situated and (ii) the problem, if any, which the city sought to remedy through the enactment of ROH § 96–19 and its continued administration and enforcement," Plts' Compl. ¶ 61(F), and that non-residents do not impose a greater burden on Hanauma Bay's resources than individual residents.[33] *See id.* at ¶ 65G. Accepting these allegations as true, as this Court must on a motion to dismiss, Plaintiffs' state a viable Equal Protection claim.

Accordingly, the Court DENIES Defendants' Motion to Dismiss, or Alternatively, for Partial Summary Judgment Regarding Plaintiffs' Claims for Violations of the U.S. Constitution's Equal Protection Clause at this time. The Court GRANTS Defendants leave to file, by July 15, 2002, a subsequent motion for partial summary judgment with respect to the issue of whether a rational reason supports ROH Sec. 10–2.11's classification.

## IV. DEFENDANTS' MOTION TO DISMISS, OR ALTERNATIVELY, FOR PARTIAL SUMMARY JUDGMENT REGARDING PLAINTIFFS' CLAIMS UNDER COUNT VII FOR VIOLATIONS OF THE FOURTH AMENDMENT

Defendants move the Court to dismiss Count VII, which relies on the Fourth Amendment to the United States

---

32. Defendants have not submitted any evidence that establishes that resident taxes (City and/or State) go toward operation, maintenance and improvement of Hanauma Bay, and perhaps such matters as its access roads, bus service, water and electricity, ensuring safety (lifeguards), enforcement of game, conservation and boating laws, construction of new facilities, preservation of the marine life and ecosystem, provision of educational programs, controlling heavy visitor traffic, or that non-residents present a greater threat of harm or are more burdensome on Hanauma

Bay than residents are. *Cf. Baldwin*, 436 U.S. at 389–91, 98 S.Ct. 1852.

33. Plaintiffs also argue in their Opposition that the residency distinction is not rational because "only property owning residents of the City and County of Honolulu contribute to the City's general fund through tax revenue since the only tax to [sic] the City can legally collect is the real property tax, and yet all residents of the State are given free access to Hanauma Bay." Plts' (Equal Protection) Opp. at 23.

Constitution and Article I, Section 7 of the Hawaii Constitution. Plaintiffs admit that the facts of the instant case do "not fit neatly within the mold of the typical Fourth Amendment search and seizure case." Plts' Opp. at 1. Nevertheless, Plaintiffs argue that because they "were not free to proceed on their way," and because Plaintiff Burgess was escorted away from the turnstile area, her Fourth Amendment rights were violated.

The Fourth Amendment to the United States Constitution provides:

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. CONST. amend IV. Similarly, Article I, Section 7 of the Hawaii Constitution provides in relevant part:

The right of the people to be secure in their persons, houses, papers and effects against unreasonable searches, seizures and invasions of privacy shall not be violated ....

HAW. CONST. art. I, § 7. "[A] seizure occurs when an officer, through some form of physical force or show of authority, restrains the liberty of a citizen such that in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *United States v. Summers*, 268 F.3d 683, 686 (9th Cir.2001) (citations omitted). However, "when an encounter is voluntary, no constitutionally protected right is implicated." *Id.* (citing *Florida v. Bostick*, 501 U.S. 429, 434, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991)). A "seizure" un-

der the Hawaii Constitution is defined similarly. *See State v. Barrickman*, 95 Hawai'i 270, 272, 21 P.3d 475 (Hawai'i Ct.App. 2001) ("Generally, a person is 'seized' if, 'from an objective standpoint and given the totality of the circumstances, a reasonable person would have believed that he or she was not free to leave.'") (citation omitted).

The Court finds that stopping to pay the $3.00 fee at the turnstile does not constitute an impermissible seizure. Visitors go to Hanauma Bay voluntarily. *See Bostick*, 501 U.S. at 434, 111 S.Ct. 2382 ("the encounter will not trigger Fourth Amendment scrutiny unless it loses its consensual nature"). Moreover, a reasonable person, when approaching the turnstile, would surely believe that (s)he had the option of turning around so as to avoid stopping. Notably, visitors do not run the risk of being arrested by the turnstile operators. Thus, the Court finds, as a matter or law, that Plaintiffs and Plaintiff Burgess were not "seized" in violation of the Fourth Amendment to the United States Constitution or Article I, Section 7 of the Hawaii Constitution.

## V. DEFENDANTS' MOTION TO DISMISS OR ALTERNATIVELY FOR PARTIAL SUMMARY JUDGMENT REGARDING PLAINTIFFS' CLAIMS UNDER HAWAII REVISED STATUTES § 7–1

■ Defendants move the Court to dismiss, or alternatively to grant partial summary judgment in their favor, on Plaintiffs' claims [34] related to H.R.S. Section 7–1. Defendants assert that Plaintiffs' activities do not fall within the purview of H.R.S. Section 7–1. Plaintiffs, on the other hand, contend that Hawaii law entitles them to

---

**34.** In Count III (involving H.R.S. Section 7–1), Plaintiffs request that the Court declare ROH Sec. 10–2.11 invalid as well as award

monetary damages for the "irreparable injury" suffered. *See* Plts' Compl. at ¶ 51–52.

pursue a private cause of action to enforce the public's right to shoreline access. Plaintiffs also argue that H.R.S. Section 7–1 inures to the benefit of the public, not merely tenants of the ahupuaa.[35]

The context in which H.R.S. Section 7–1 came into existence bears on the statute's import. In ancient Hawaiian times, the King "owned" all of the land. *Kalipi v. Hawaiian Trust Co.*, 66 Haw. 1, 6, 656 P.2d 745 (1982). Pie-piece shaped parcels of land running from the sea to the mountains, called ahupuaas, were distributed from the King to a chief, at the King's discretion. *Id.* The land sustained the chief and his people, providing "a fishery residence at the warm seaside, together with the products of the high lands, such as fuel, canoe timber, mountain birds, and the right of way to the same, and all the varied products of the intermediate land as might be suitable to the soil and climate of the different altitudes from the sea soil to mountainside or top." *Id.* (citing *In Re Boundaries of Pulehunui*, 4 Haw. 239, 241 (1879)). "Traversing of an ahupuaa to gather items naturally found there was therefore a matter of practical necessity" and "governance and control of ahupuaa also conformed with the exercise of this privilege." *Id.*

Significant changes in Hawaii's traditional land system occurred in the mid-1800s. A series of acts: (1) The Great Mahele of 1848 (granting chiefs fee simple title to Crown lands), (2) the Act of July 10, 1850 (allowing foreigners to own land in fee simple), and the Kuleana Act of 1850 (allowing commoners to obtain fee simple interests in the lands they cultivated) were designed to provide vested rights in the government, the landlord and the tenant. *See Pai 'Ohana v. United States*, 875 F.Supp. 680, 686 (D.Hawai'i 1995); *Kalipi*,

66 Haw. at 7, 656 P.2d 745. The last section of the Kuleana Act is what we now know as H.R.S. Section 7–1. *Id.* The Statute provides:

> Where the landlords have obtained, or may hereafter obtain, allodial titles to their lands, the people on each of their lands shall not be deprived of the right to take firewood, house-timber, aho cord, thatch, or ki leaf, from the land on which they live, for their own private use, but they shall not have a right to take such articles to sell for profit. The people shall also have a right to drinking, and running water, and the right of way. The springs of water, running water, and roads shall be free to all, on all lands granted in fee simple; provided that this shall not be applicable to wells and watercourses, which individuals have made for their own use.

Haw.Rev.Stat. § 7–1 (Michie 1998). The Hawaii Supreme Court acknowledges that the statute serves to "insure that commoners would be able to exercise those rights in connection with their tenancy in order to ensure the utilization and development of their lands." *Kalipi*, 66 Haw. at 7, 656 P.2d 745.

While Defendants devote their attention to the activities permitted under Section 7–1, the Court finds that it need not reach this question due to the fact that by the clear language of the statute and Hawaii caselaw interpreting it, Plaintiffs, non-residents of the State of Hawaii, are not entitled to the rights afforded by Section 7–1. Plaintiffs acknowledge this impediment. *See* Plts' Opp. at 12. Nevertheless, they argue that the rights conferred by the portion of Section 7–1 stating that "the springs of water, running water and roads shall be free to all" applies not only to

---

**35.** In the Kingdom of Hawaii, an "ahupuaa" referred to a parcel of land that "generally ran from the sea to the mountains." *Kalipi v.*

*Hawaiian Trust Co.,* 66 Haw. 1, 6, 656 P.2d 745 (1982).

ahupuaa tenants, but to the public generally. The Court finds otherwise.

In *Kalipi,* the Hawaii Supreme Court, in interpreting H.R.S. Section 7–1, concluded that actual residency in the ahupuaa, not merely ownership of property within it, was required. *Kalipi,* 66 Haw. at 8, 656 P.2d 745. Although the Hawaii Supreme Court may be inclined to relax this strict requirement to some degree, *cf. Public Access Shoreline Hawaii v. Hawaii County Planning Comm'n,* 79 Hawai'i 425, 448, 903 P.2d 1246 (1995) (noting "article XII, section 7 . . . obligates the State to protect customary and traditional rights normally associated with tenancy in an ahupua'a, [and] may also apply to exercise of rights beyond the physical boundaries of that particular ahupua'a"),[36] given the historical context in which the statute came into existence, the Court finds that the rights secured by H.R.S. Section 7–1 were not intended to inure to those who, at the time access is sought, reside thousands of miles outside the State of Hawaii.[37] Because ROH Sec. 10–2.11 imposes a fee on non-residents only, the ordinance does not contravene H.R.S. Section 7–1.

Accordingly the Court GRANTS Defendants' Motion to Dismiss, or Alternatively, for Partial Summary Judgment As to All Claims Under Hawaii Revised Statutes Section 7–1.

## VI. DEFENDANTS' MOTION TO DISMISS WITH PREJUDICE, OR ALTERNATIVELY, FOR PARTIAL SUMMARY JUDGMENT AS TO ALL CLAIMS UNDER HAWAII REVISED STATUTES CHAPTER 480

■ Defendants argue that H.R.S. Section 480 does not permit suit against a municipality because the statute "was intended to prohibit certain conduct of private businesses/entities, rather than governmental entities." Defs' (Chapter 480) Mot. to Dismiss at 3. Defendants also state that public policy concerns and the fact that punitive damages are not allowed against a municipality support their argument. Plaintiffs, on the other hand, argue the following: (1) Title 480 regulates conduct and does not limit who may be sued, (2) that the City has "stepped outside its traditional governmental function" and thus, is engaging in "trade or commerce," (3) the general policy of Chapter 480 weighs in favor of allowing suit against governmental agencies, and (4) Chapter 480's treble damages are remedial in nature not punitive.

---

**36.** The Court notes that subsection (d) of the ordinance provides:

> (d) Hawaiians entering the Hanauma Bay Nature Preserve to exercise their traditional and customary rights for subsistence, cultural and religious purposes shall be exempt from paying the fees established in subdivisions (a)(1) and/or (a)(2) as the case may be; provided that nothing in this subsection shall be construed as allowing activities which may be otherwise prohibited by the Hawaii Revised Statutes or administrative rules of the department of land and natural resources. For purposes of this section, "Hawaiian" means the same as defined in HRS Section 11–1.

HONOLULU REVISED ORDINANCES § 10–2.11(d).

**37.** The Court notes that some of the plaintiffs in *Akau v. Olohana Corp.,* 65 Haw. 383, 652 P.2d 1130 (1982), a case that held that "a member of the public has standing to sue to enforce the rights of the public," were Hawaii residents who did not reside in the area where access was being sought and merely owned land nearby. *Id.* at 384, 652 P.2d 1130. However, because *Akau* did not assess the requirements of H.R.S. Section 7–1 and because in that case the plaintiffs asserted numerous additional causes of action, *Kalipi's* interpretation of H.R.S. Section 7–1 is controlling.

Count IX of Plaintiffs' Second Amended Complaint asserts a claim under H.R.S. Section 480–2. Section 480–2 provides:

(a) Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are unlawful.

(b) In construing this section, the courts ... shall give due consideration to the rules, regulations, and decisions of the Federal Trade Commission and the federal courts interpreting section 5(a)(1) of the Federal Trade Commission Act (15 U.S.C. Section 45(a)(1)),[38] as from time to time amended.

(c) No showing that the proceeding or suit would be in the public interest (as these terms are interpreted under section 5(b) of the Federal Trade Commission Act) is necessary in any actions brought under this section.

(d) No person other than a consumer, the attorney general or the director of the office of consumer protection may bring an action based upon unfair or deceptive acts or practices declared unlawful by this section.

Haw.Rev.Stat. § 480–2 (Michie 1998). Section 480–13(b)(1) provides consumers who are injured by an act unlawful under Section 480–2 with a private right of action. Section 480–13 provides in relevant part:

(b) Any consumer who is injured by any unfair or deceptive act or practice forbidden or declared unlawful by section 480–2:

(1) May sue for damages sustained by the consumer, and, if the judgment is for the plaintiff, the plaintiff shall be awarded a sum not less than $1,000 or threefold damages by the plaintiff sustained, whichever sum is the greater,

and reasonable attorneys fees together with the costs of suit ....

Haw.Rev.Stat. § 480–13 (Michie Supp. 2001). The legislature used "broad and sweeping terms" in an effort to "stop and prevent fraudulent, unfair or deceptive business practices for the protection of both consumers and honest businessmen and businesswomen." *Han v. Yang*, 84 Hawai'i 162, 177, 931 P.2d 604 (Hawai'i Ct.App.1997) (citations omitted).

Section 480–2 declares unlawful "unfair or deceptive acts or practices in the conduct of any trade or commerce." While stating who may sue in Section 480–13, the statute is silent, with the exception of Sections 480–10 and 480–11 which provide exceptions for labor organizations and "certain cooperative organizations; insurance transactions; approved mergers of federally regulated companies; homeless facility and program donors and provider agencies," respectively, *see* Haw.Rev.Stat. §§ 480–10, 480–11 (Michie 1998), as to who can be held liable for infractions. It appears that the only limitation on potential defendants comes from Section 480–2's requirement that the acts or practices be done "in the conduct of any trade or commerce." *See Cieri v. Leticia Query Realty, Inc.*, 80 Hawai'i 54, 62, 905 P.2d 29 (1995) (noting that "as a threshold issue, we must first address whether the defendants in this case engaged in 'conduct in any trade or commerce'").

The legislative history and judicial interpretation of Chapter 480 indicates a movement toward increasing consumer protection. While the 1985 version of Chapter 480 required a "showing that the action is in the public interest or that the defendant is a merchant," *Wiginton v. Pacific Credit Corp.*, 2 Haw.App. 435, 443, 634 P.2d 111 (1981), the 1987 amendments to the statute

---

**38.** 15 U.S.C. Section 45(a)(1) provides: "Unfair methods of competition in or affecting commerce, and unfair or deceptive acts of practices in or affecting commerce, are hereby declared unlawful." 15 U.S.C.A. § 45(a)(1) (West 1997).

removed this requirement to "allow 'consumers' who had been the victims of unfair or deceptive acts or practices in the conduct of any trade or commerce, a means to seek recompense for purely individual wrongs." *Cieri*, 80 Hawai'i at 60, 905 P.2d 29.

In *Big Island Small Ranchers Association v. State*, 60 Haw. 228, 588 P.2d 430 (1978), the Hawaii Supreme Court determined that the provisions of Chapter 480 did not apply to the State. *See id.* at 236, 588 P.2d 430. In reaching this conclusion, the court noted that "[i]t is a general principle of law that statutory laws of general application are not applicable to the State unless the legislature in the enactment of such laws made them explicitly applicable to the State," *id.* (quoting *A.C. Chock, Ltd. v. Kaneshiro*, 51 Haw. 87, 451 P.2d 809 (1969)), and that the doctrine of sovereign immunity precludes suit against the State without the State's express consent. *See id.*

Given that the City is a municipality not shielded by the doctrine of sovereign immunity, the Court is wary to find it exempt on the basis that the legislature did not expressly make Chapter 480 applicable to it. While this omission can on the one hand be interpreted as indicating an intent not to regulate municipalities, on the other hand, the lack of a specific exclusion, in the face of express exclusions given to labor and cooperative organizations, *see* Haw. Rev.Stat. §§ 480–10 and—11, connotes the intent not to exempt the City. *See State v. Harada*, 98 Hawai'i 18, 42, 41 P.3d 174 (2002) ("the maxim expressio unius est exclusio alterius," means "the express mention of one thing implies the exclusion of another"). Given that Chapter 480 provides express exceptions for other organizations, Defendants' proffered interpretation appears to require an impermissible interpolation of an additional exception to Chapter 480. *See Chong Yet You v. Rose*,

23 Haw. 220, 220 (1916) (the court must refrain from "the interpolation of conditions into a statute-additional terms-not found in the statute [when] considered as a whole"). Notably, when confronted with the same issue, the courts of Massachusetts, which the Hawaii Supreme Court looks to for guidance, *see Cieri*, 80 Hawai'i at 63, 905 P.2d 29, chose not to proclaim municipalities absolutely immune from suit, but to analyze whether the city was "engaged in trade or commerce" in deciding liability. *See United States Leasing Corp. v. City of Chicopee*, 402 Mass. 228, 521 N.E.2d 741, 744 (1988) ("We need not decide, however, whether municipalities may in some circumstances be amenable to c. 93A claims, for even if that is so it is clear in the circumstances of this case that the city was not engaged in 'trade or commerce.' Such engagement is requisite for liability under the statute."); *Bretton v. State Lottery Comm'n*, 41 Mass.App.Ct. 736, 673 N.E.2d 76, 79 (1996) ("the proscription of § 2 of 'unfair or deceptive acts or practices in the conduct of any trade or commerce' must be read to apply to those acts of practices which are perpetrated in a business context. We must therefore determine whether the commission acts in a business context as contemplated by the statute.") (citations omitted); *cf. Genesco Entertainment v. Koch*, 593 F.Supp. 743, 751–52 (S.D.N.Y.1984) (no discussion of whether municipality can be held liable under New York deceptive trade practice act, rather focus on nature of commercial transaction).

The legislative history of the Act, contrary to Defendant's argument, also supports this conclusion. Defendants point out that Section 480–2 "was constructed in broad language in order to constitute a flexible tool to stop and prevent fraudulent, unfair or deceptive ***business practices*** for the protection of both consumers and honest businessmen . . . ." Defs' Mot. to Dismiss at 3 (emphasis in original).

Though Defendants interpret "business practices" as limited to private entities, municipalities such as the City and County of Honolulu, are considered "to have a dual character." *Maki v. City & County of Honolulu*, 33 Haw. 167, 173 (1934). Municipal corporations are more than "governmental instrumentalities;"[39] they are also "incorporated at the wish and special instance of the inhabitants for the advancement of their own private interests and exercise powers and privileges which are to be exercised for the improvement of the territory within their limits and for its adaptation to the purposes of residence and business." *Id.* Thus, the legislature's reference to "business practices," contrary to Defendants' contention, in fact conveys the intent to regulate municipalities. Moreover, this Court is guided by the Hawaii Supreme Court's instruction that H.R.S. Chapter 480, as a remedial statute, should be "liberally construed to suppress the perceived evil and advance the enacted remedy," *Cieri*, 80 Hawai'i at 68, 905 P.2d 29 (quoting *Dawes v. First Ins. Co. of Hawai'i, Ltd.*, 77 Hawai'i 117, 123, 883 P.2d 38 (1994)). The legislative history of the statute indicates an intent to provide consumers with broad protection. Limiting the pool of potential defendants is inconsistent with this purpose.

Finally, Defendants contend that the statute's treble damage provision indicates that Section 480 was not intended to apply to municipalities. The Court appreciates that this is Defendants' strongest argument. In *Lauer v. Young Men's Christian Assoc. of Honolulu*, 57 Haw. 390, 557 P.2d 1334 (1976), the Hawaii Supreme Court concluded that municipal corporations could not be held liable for punitive damages. *See id.* at 402, 557 P.2d 1334. The *Lauer* Court reasoned that because "[t]he deterrent or retributive effect of punitive damages must be placed squarely on the shoulders of the wrongdoer," the municipality comprised of "innocent taxpayers ... should not be made to suffer." *Id.* Chapter 480 provides for treble damages, the purpose of which is "to deter potential wrongdoers and encourage enforcement of the law." *See* Stand. Comm. Rep. No. 803, 21st Leg. (Haw.2001). Therefore, following the reasoning of *Lauer*, treble damages would not be recoverable as against the City and County. *Cf. Lauer*, 57 Haw. at 402, 557 P.2d 1334; *see also Davis v. Wholesale Motors, Inc.*, 86 Hawai'i 405, 421, 949 P.2d 1026 (Hawai'i Ct.App.1998) (citing *Han*, 931 P.2d at 619, for the proposition that "Treble damages are a form of deterrence and hence serve a purpose similar to punitive damages. A legislative purpose of HRS § 480-2 was the deterrence of fraudulent, unfair or deceptive business practices."); *Eastern Star, Inc. v. Union Building Materials Corp.*, 6 Haw. App. 125, 141, 712 P.2d 1148 (1985) (holding that allowing punitive damages and treble damages for a Section 480-2 violation would constitute impermissible double recovery).[40] While the Court agrees with Defendants that Chapter 480's provision

---

**39.** The *Maki* Court noted that "[w]hile acting in their capacity as governmental instrumentalities they are, like the sovereign power itself, exempt from liability for acts done or omitted unless such liability is expressly created by statute." *Maki*, 33 Haw. at 173. However, municipalities are not always treated "like the sovereign." "[W]hen they are acting not in their governmental capacity but in their municipal or corporate capacity, exercising powers and privileges given them for their own corporate benefit, they are held liable for their acts and omissions in exercising these powers." *Id.*

**40.** The United States Supreme Court, in *Brunswick Corp. v. Pueblo Bowl–O–Mat, Inc.*, 429 U.S. 477, 97 S.Ct. 690, 50 L.Ed.2d 701 (1977), cited by Plaintiffs, found that the treble damages provision of the Clayton Act serves both remedial and penal purposes. The *Brunswick* Court remarked:

> To answer that question [whether antitrust damages are available where the sole

for treble damages weighs in favor of finding that the Hawaii Legislature did not intend to regulate municipalities, principles of statutory construction and the legislative history indicate a contrary intent. The Court finds the following a reasonable reconciliation of these contrasting indications: Though a municipality may be held liable under Chapter 480, it is not subject to a treble damage penalty.[41] The consumer would, at least arguably, be entitled to the greater of his/her actual damages or $1,000 and/or an injunction in accordance with H.R.S. Sections 480–13(b)(1) and (b)(2).[42]

For the foregoing reasons, the Court concludes that municipalities are not altogether exempt from the provisions of H.R.S. Chapter 480. However, the express language of the statute limits its applicability to those "engaged in any trade or commerce." The Court is inclined to find that the City's practice of charging non-residents a $3.00 entrance fee is not "in the conduct of any trade of commerce."[43] See Bretton, 673 N.E.2d at 79

injury alleged is that competitors were continued in business, thereby denying respondents an anticipated increase in market shares] it is necessary to examine the anti-merger and treble-damages provisions of the Clayton Act. Section 7 of the Act proscribes mergers whose effect "may be substantially to lessen competition, or to tend to create a monopoly." It is, as we have observed many times, a prophylactic measure, intended "primarily to arrest apprehended consequences of intercorporate relationships before those relationships could work their evil ...."

Section 4, in contrast, is in essence a remedial provision. It provides treble damages to "any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws ...." *Of course, treble damages also play an important role in penalizing wrongdoers and deterring wrongdoing, as we also have frequently observed.*
*Id.* at 485, 97 S.Ct. 690 (citations omitted) (emphasis added).

**41.** *Palm Springs Medical Clinic, Inc. v. Desert Hospital,* 628 F.Supp. 454 (C.D.Cal.1986), cited by both parties, supports this conclusion. Although the case evaluates the scope of the 1984 Local. Government Antitrust Act, codified at 15 U.S.C. §§ 34–36, which prohibits recovery of damages as against local governments, (the Federal Trade Commission Act, codified at 15 U.S.C. § 41 et seq., not having a similar provision), the legislative history of the 1984 Act regarding the issue of treble damages is relevant here: "Public policy, with respect to local government, is a different policy. [L]ocal governments are supported by taxpayers. If we allow treble damages against local governments the taxpayers

are going to end up paying the bill for official actions by local governments." *Id.* at 465 (citing 130 Cong. Rec. H12183 (statement of Rep. Seiberling)). Notably, although the 1984 Act outlaws recovery of damages against local governments, it does not completely immunize local government from the reach of federal antitrust law; injunctive relief is still available as against "a local government [that] goes beyond its powers and tries to interfere with trade by activities in the private sector." *Id.*

**42.** The Court notes that Section 480–13(b)(1)'s provision for a $1,000 minimum recovery does not apply in a class action or a de facto class action lawsuit as per Section 480–13(c)(1). *See* Haw.Rev.Stat. § 480–13(c)(1) (Michie 2001 Supp.).

**43.** Plaintiffs argue that Defendants concede for purposes of this motion that imposition of the $3.00 fee "is an unfair or deceptive act in violation of Hawaii Revised Statutes § 480–2" and that such concession is "fatal" because "in order to be in violation, the act or practice must be in the conduct of any trade or commerce." *See* Plts' Opp. at 1. While it is unclear to the court whether Defendants have conceded that the $3.00 fee is an "unfair or deceptive act," *see* Defs' Mot. at 1–2 ("[F]or the purposes of the instant Motion only, the following allegations are not in dispute: ... 4. Plaintiffs *allege* that Defendant CITY AND COUNTY OF HONOLULU ('CITY') violated Hawaii Revised Statutes Chapter 480 because: ... c. Defendant CITY's imposition of the entrance fee on non-residents is an 'unfair or deceptive act' in violation of Hawaii Revised Statutes § 480–2.") (emphasis added).

("activities, such as running of state lottery, of commission driven by legislative mandate, not business or personal objectives and thus not in trade and commerce"). However, Defendants while arguing that Chapter 480 should not apply to municipalities, have not provided the Court with argument or evidence to support such a finding nor argued that Plaintiffs' Complaint is deficient for failure to allege that Defendants' acts are "in any trade or commerce." Plaintiffs, through their Opposition, vigorously argue that the City's practice is beyond traditional government functions and more akin to trade and commerce. Thus, the Court DENIES Defendants' Motion to Dismiss, or Alternatively, for Partial Summary Judgment as to All Claims Under Hawaii Revised Statutes Chapter 480 at this time and GRANTS Defendants leave to file, by July 15, 2002, a subsequent Motion for Partial Summary Judgment with respect to this issue.

## VII. DEFENDANTS' MOTION TO DISMISS, OR ALTERNATIVELY, FOR PARTIAL SUMMARY JUDGMENT AS TO ALL CLAIMS AGAINST DEFENDANT JEREMY HARRIS

Defendants argue that Defendant Harris is entitled to absolute immunity. Plaintiffs concede that Defendant Harris may not be sued for legislative acts, what they term "pre-enactment conduct." Plts' Opp. at 2. Plaintiffs argue, however, that Defendant Harris should be held liable for "his role in knowingly directing and/or failing to control his subordinates with respect to their unconstitutional activities," in their words, his "post-enactment wrongdoing in the en-

forcement and administration of the ordinance." *Id.* at 1, 2.

 In the Ninth Circuit, "members of local legislative bodies have complete immunity from suits based on their legislative acts." *Kuzinich v. County of Santa Clara*, 689 F.2d 1345, 1350 (9th Cir.1982). The immunity afforded to legislators extends to all "actions falling within 'the sphere of legitimate legislative activity.'" *Chappell v. Robbins*, 73 F.3d 918, 920 (9th Cir.1996) (citing *Tenney v. Brandhove*, 341 U.S. 367, 376, 71 S.Ct. 783, 95 L.Ed. 1019 (1951)). "Officials outside the legislative branch are entitled to legislative immunity when they perform legislative functions." *Bogan v. Scott–Harris*, 523 U.S. at 55, 118 S.Ct. 966 (citing *Supreme Court of Va. v. Consumers Union of United States, Inc.*, 446 U.S. 719, 731–34, 100 S.Ct. 1967, 64 L.Ed.2d 641 (1980)).

 The Court finds that Defendant Harris is entitled to absolute legislative immunity for his role in the passage of ROH Sec. 10–2.11. Plaintiffs allege that Defendant Harris should be held accountable for "orchestrat[ing] the passage of ROH § 96–19," Plts' Compl. ¶ 102, and for his role in the "enforcement and administration of the ordinance." Plts' Opp. at 2. However, Defendant Harris's act of pushing for and signing into law legislation, much like Mayor Bogan's act of introducing a budget and signing into law an ordinance in *Bogan v. Scott–Harris*, was formally legislative. *See Bogan*, 523 U.S. at 55, 118 S.Ct. 966 (citing *Edwards v. United States*, 286 U.S. 482, 490, 52 S.Ct. 627, 76 L.Ed. 1239 (1932), for the proposition that the President's function in approving or disapproving bills is legislative in char-

However, even assuming that Defendants have conceded that the $3.00 fee is an "unfair or deceptive act," the Court does not agree with Plaintiffs that Defendants have also conceded that the City's practice is "in the con-

duct of any trade or commerce." Although Defendants do not expressly refute Plaintiffs' accusation in their Reply, they have continuously maintained the position that the City does not engage in business activity.

acter). Additionally, the Court notes that Defendant Harris' act was policy based and affects the public at large, not a few individuals. *See Chappell,* 73 F.3d at 920–21 (advising the Court to inquire: (1) Does the act involve ad hoc decision making, or the formulation of policy? (2) Does the act apply to a few individuals or the public at large?). Thus, Defendant Harris is immune from liability for these acts.

The Court finds little merit in Plaintiffs' argument that Defendant Harris' legislative immunity does not extend to the post-enactment activities complained of given that such activities (the implementation of the ordinance such as directing City employees to collect the fee) did not involve discretionary decisions or the singling out of specific individuals. *Cf. Zamsky v. Hansell,* 933 F.2d 677, 679 (9th Cir.1991) (official not entitled to legislative immunity for act of singling out plaintiff's property), *Am. Federated Gen. Agency, Inc. v. City of Ridgeland,* 72 F.Supp.2d 695, 708 (S.D.Miss.1999) ("[Mayor] McGee simply carried out the policies required by his employment in a general manner" such that legislative immunity applied). Plaintiffs do not argue that the manner in which the ordinance is administered is unconstitutional-e.g. that certain non-residents are charged while others are not—but that the ordinance itself is unconstitutional. Thus, Plaintiffs take issue with Defendant Harris' enactment (signing into law) of the ordinance, not his administration of it. As discussed, Defendant Harris' decision to enact (or in other circumstances to veto) an ordinance, is a legislative act for which he is absolutely immune. *See Bogan,* 523 U.S. at 55, 118 S.Ct. 966; *Hernandez v. City of Lafayette,* 643 F.2d 1188, 1193–94 (5th Cir.1981) ("We conclude that when a mayor of a municipality vetoes an ordinance passed by the city's legislative body, he performs a legislative function and is entitled to absolute immunity from a civil suit complaining about actions taken in his

legislative capacity."). Moreover, Plaintiffs have not established any material issues of fact.

Accordingly, the Court GRANTS Defendants' Motion to Dismiss, or Alternatively, for Partial Summary Judgment, as to All Claims against Defendant Jeremy Harris.

## CONCLUSION

Hanauma Bay is not an ordinary beach; it is designated a nature preserve and marine conservation district, a natural resource protected for the benefit of all. With this in mind, and based on the foregoing discussion, the Court holds and makes the following findings:

The Court GRANTS Defendants' Motion to Dismiss, or Alternatively, for Partial Summary Judgment as to Count I (First Amendment). The Court finds that Plaintiff Burgess' First Amendment rights were not violated and that ROH Sec. 10–2.11 is not overbroad.

The Court GRANTS Defendants' Motion to Dismiss, or Alternatively, for Partial Summary Judgment Regarding Plaintiffs' Claims for Violations of the Privileges and Immunities Clause (Count V). Similar to the United States Supreme Court's reasoning in *Baldwin,* neither the "vitality of the Nation as a single entity" nor the "maintenance or well being of the Union" hinges on ensuring non-residents of Hawaii equality in access to Hanauma Bay. Thus, none of Plaintiffs' "fundamental" rights (for purposes of the Privileges and Immunities Clause) are at stake with respect to charging non-resident's an access fee to enter Hanauma Bay.

The Court DENIES Defendants' Motion to Dismiss, or Alternatively, for Partial Summary Judgment Regarding Plaintiffs' Claims for Violation of the U.S. Constitution's Equal Protection Clause (Count VI). While Hawaii residents enjoy access over

our beaches, the Court finds that non-residents of Hawaii do not have a fundamental right of access to Hanauma Bay, and alternatively, that the $3.00 charge does not impinge on any equal protection rights alleged by Plaintiffs. Accordingly, the appropriate standard of review is rational basis, not strict scrutiny. Based on the current record, a genuine issue of material facts exists with respect to the rationality of ROH Sec. 10–2.11. Defendants are granted leave to file, by July 15, 2002, a subsequent Motion for Partial Summary Judgment to establish the rationality of the ordinance.

The Court GRANTS Defendants' Motion to Dismiss, or Alternatively, for Partial Summary Judgment regarding Plaintiffs' Claims for Violations of the Fourth Amendment (Count VII). The Court finds that Plaintiffs' and Plaintiff Burgess' Fourth Amendment rights were not violated. The Court further finds that stopping at the turnstile to pay the $3.00 entrance fee does not constitute an impermissible "seizure."

The Court GRANTS Defendants' Motion to Dismiss, or Alternatively, for Partial Summary Judgment Regarding Plaintiffs' Claims Under Hawaii Revised Statutes Section 7–1 (Count III). The Court finds that the rights afforded by Section 7–1 do not inure to Plaintiffs, non-residents of the State of Hawaii, or to Plaintiff Burgess, a Colorado resident.

The Court DENIES Defendants' Motion to Dismiss, or Alternatively, for Partial Summary Judgment as to All Claims Under Hawaii Revised Statutes Chapter 480 (Count IX). The Court finds that municipalities may be held liable pursuant to this statute if its act is done "in the conduct in any trade or commerce." The Court GRANTS Defendants leave to file, by July 15, 2002, a subsequent motion for partial summary judgment on the issue of whether the City's practice of charging a $3.00 entry fee constitutes "conduct in any trade or commerce." The Court concludes, however, that Chapter 480's provision for treble damages does not apply to the City, as the Hawaii appellate courts have ruled that municipal corporations cannot be held liable for punitive damages and that treble damages under Chapter 480 serve a purpose similar to punitive damages.

The Court GRANTS Defendants' Motion to Dismiss, or Alternatively, for Partial Summary Judgment as to All Claims Against Defendant Jeremy Harris (Count XV). The Court finds that Defendant Harris is entitled to legislative immunity and that no material issues of fact remain with respect to this count.

IT IS SO ORDERED.